Bartemeyer et al. v. Rohlfs et al.

## BARTEMEYER ET AL. V. ROHLFS ET AL.

1. **Railroads**: TAX IN AID OF: CITIES UNDER SPECIAL CHARTERS: APPLICABILITY OF STATUTE. Although it is provided by chapter 116, Laws of 1876, that "no general laws as to powers of cities organized under the general incorporation act shall in any manner be construed to affect the charters or laws of cities organized under special charters, while they continue to act under such charters, unless the same shall have special reference to such cities," yet the statute authorizing taxation in aid of railroads cannot be held to be a law affecting the chartered powers of cities; and a city acting under a special charter may, under the provisions of such statute, lawfully vote a tax in aid of a railroad. (*State v. Finger*, 46 Iowa, 25, distinguished.)

2. ——: ——: NOTICE OF ELECTION: DESIGNATION OF TERMINI. Where the notice of an election in the city of Davenport, upon the question of aiding a railroad company in the construction of a road, stated that the proposed road was to begin at a definitely described point within that city, and to run "thence westward along the Mississippi river to the western boundary of the city of Davenport; thence westwardly to Anamosa, in Jones county, Iowa, or to a point nearer, to connect with a railroad not now running to Davenport aforesaid," *held* that the notice sufficiently designated the *termini* of the road to satisfy the requirement of chapter 159, Laws of 1884.

3. ——: ——: ——: DESIGNATION OF TIME WHEN WORK IS TO BE DONE. It is not necessary that a notice of an election upon the question of voting a tax in aid of a railroad should state the date upon which the work shall be done, in order to entitle the company to the tax. It is sufficient if it provides, as in this case, that the tax shall be payable when a specified amount of the work is done.

4. ——: ——: PETITION AND NOTICE: VARIANCE: BASIS OF LEVY. In view of the fact that taxes in aid of railroads must be levied by the county supervisors, and the further fact that the city of Davenport is coterminous with the civil township in which it is situated, *held* that a variance between the *petition* for an election upon the question of voting a tax in aid of a railroad, and the *notice* of such election—the petition being for a tax on the "*assessed value of the property in said city*," and the notice being of a tax "*upon the assessed value according to the county valuation*,"—was immaterial, since the supervisors could not be presumed to know anything of any valuation except the county valuation.

5. ——: ——: ——: ROUTE OF ROAD. Where in such case the petition for the election described the route of the proposed railroad to be from a certain point "*northwestwardly* to Anamosa, or to a point nearer," and the notice described it to be from the same point "*westwardly* to Anamosa, or to a point nearer," *held* that the variance was immaterial.

6. ——: ——: NOTICE: TIME OF LEVY AND COLLECTION. Where the notice in such case provided: "One-half of said tax to be levied and collected in the year 1887, and the other half in the year 1888," and the election was held on the 25th of September, 1886, and the levy made on the 29th of the same month, *held* that the levy was valid, and that the notice should be construed, not as requiring the tax to be levied and collected the same year, which the law does not permit, but to be so levied that it might be lawfully collected—one-half in the year 1887, and the other half in the year 1888.

7. ——: ——: CERTIFICATE OF CLERK: ORDER OF ·SUPERVISORS: IMMATERIAL OMISSION. Where in such case the clerk of the election has, as required by the statute, certified to the county auditor the result of the election, the rate per centum of the tax voted, and the time, terms and conditions upon which the same, when collected, is to be paid to the railroad company, together with an exact copy of the notice under which the election was held, and the same has been recorded in the office of the recorder of deeds; and the order of the board of supervisors by which the levy was made shows that, when the levy was made, it had before it the certificate of the clerk of the election, and the levy was made in accordance with the notice of the election, but the order did not set out the conditions on which the taxes were to be paid to the company, as the statute directs, *held* that this omission in the order did not invalidate the tax.

*Appeal from Scott District Court.*

WEDNESDAY, APRIL 20.

THIS is an action in equity by which the plaintiffs, who are tax-payers of the city of Davenport, seek to enjoin the collection of a tax voted by the legal voters of said city to aid in the construction of a railroad projected by the Davenport, Iowa & Dakota Railroad Company, defendant. The cause was submitted to the court below upon a petition, answer and reply, and upon certain exhibits and affidavits. Upon the record thus made, the plaintiffs moved the court to grant a temporary injunction restraining the defendant Rohlfs, who is treasurer of the county, from proceeding to collect said tax. The motion for an injunction was overruled. From this order the plaintiffs appeal.

*Cook & Dodge*, for appellants.

*Davison & Lane* and *Bills & Block*, for appellees.

ROTHROCK, J.—I.   The material facts in the case are not

in dispute. The plaintiffs concede that an election was held, in pursuance of a petition for that purpose, signed by the requisite number of the legal voters of the city, and that at said election a majority of those who voted cast their ballots for the tax. It is contended, however, that the tax is illegal and void for a number of reasons, which we will proceed to consider.

The city of Davenport is organized under a special charter. By virtue of its charter, all city taxes are assessed, levied and collected by officers and agents of the city, independently of the agencies and officers provided for the asssessment, levy and collection of taxes for state, county and other purposes. The city comprises a township called the township of the city of Davenport, and the municipality and the township embrace precisely the same territory. They are bounded by the same lines, and all taxes other than city taxes are assessed, levied and collected by township and county officers, independently of the city authorities. There are some four or five cities in this state which are organized in the same way. Their charters are not to be found in the general laws. They are, in effect, a law unto themselves, and, by reason of this want of uniformity in the laws governing incorporated towns and cities, many vexatious questions arise in the courts in determining the applicability of legislation pertaining to the powers of cities and towns. It is not easy to perceive why the people of cities organized under special charters do not organize under the general incorporation law, and thus avoid the expense of keeping up all the machinery necessary to collect taxes for city purposes, and also prevent much unnecessary litigation.

It is claimed by counsel for appellants in this case that the tax in question is void, because chapter 159 of the Acts

1. RAILROADS: tax in aid of: cities under special charters: applicability of statute.

of the Twentieth General Assembly, which authorizes taxes to be voted and levied on the assessed value of any township, incorporated town or city, to aid in the construction of railroads, has no application to a city organized and existing

under a special charter. It is true that the act authorizing the voting and levy of the tax does not specially refer to cities existing under special charters. And chapter 116 of the Laws of the Sixteenth General Assembly provides as follows: "No general laws as to powers of cities organized under the general incorporation act shall in any manner be construed to affect the charter or laws of cities organized under special charters, while they continue to act under such charters, unless the same shall have special reference to such cities." Before the enactment of this statute, it had been determined by this court that any statute which, by its general scope and intent, might be applicable to cities acting under special charters, should be construed as applying to them. *Grant v. City of Davenport*, 36 Iowa, 396. The act of the Sixteenth General Assembly limited this rule of construction, by providing that general laws, "as *to powers of cities*," shall not affect the charter or laws of cities existing under special charters, unless special reference is made in the law to such cities.

If the law authorizing taxation in aid of railroads were a law "as to powers of cities," the position of counsel would be correct. It is claimed that the case of *State v. Finger*, 46 Iowa, 25, construed this statute, and that, under the construction there adopted, the law authorizing taxation in aid of railroads must be held inapplicable to cities under special charters. That was a contest between two persons for the office of assessor in the city of Davenport. It was held that section 390 of the Code, as amended, and section 829, materially affect the powers of cities incorporated under the general law. The manner in which the power of cities is affected is pointed out in the opinion in that case. Among other things, it is said that "it confers upon them power to choose the officer who shall make the assessment upon which their city revenue is to be raised;" and by section 829 the city council is given the power to equalize the assessments of taxpayers. In other words, it is held that the application

of the law in question in that case to a city acting under a special charter would require the election of an officer at the city election who is not recognized by the city charter, or by any ordinance of the city, and it would require the city council to act as a board of equalization.

In our opinion, the law authorizing taxation in aid of railroads cannot be held to be a law affecting the chartered powers of a city. It seems to us that this is quite apparent from an examination of the whole act. In the first place, the tax voted under the law is not a city tax. It is not levied by the city council. It is required to be levied by the board of supervisors. It is true, certain officers of the city are required to determine whether a majority of the taxpayers have signed a petition for an election, and to call the election, and declare the result. But the city, as a corporation, is in no manner affected by the result, and is not liable for anything,—not even for the expenses of holding the election. The officers to whom these duties are assigned are clothed with no discretion. They are mere agents designated by law to determine when the statute has been complied with. If the legislature, instead of designating certain officers of the city to perform this duty, had provided for the appointment of commissioners, or had imposed the duty on some court or judge or other person, the powers of the city would surely not have been affected by the law; and we cannot see that the fact that the law designates certain city officers to perform the duties imposed, affects the powers of the city, any more than the appointment of a person or persons not connected with the city government.

II. Next it is urged that the tax in question is void because of fatal defects in the notice of the special election.

2. —— : ——; notice of election: designation of termini. It is claimed that the notice does not specify to what point said railroad shall be fully completed before said tax, or any part thereof, shall become due, collectible and payable, and does not state " the amount of work required to be done, and when and where the same

shall be done," as required by section 3 of the act authorizing the tax. The notice of election was as follows: "In pursuance of an ordinance of the city council of the city of Davenport of August 20, 1886, notice is hereby given that a special election will be held in said city of Davenport on the twenty-fifth day of September, 1886, upon the question of aiding the Davenport, Iowa & Dakota Railroad Company in the construction of a line of railway from a point on the levee in the said city of Davenport, Scott county, Iowa, between Brady and Main streets, where the passenger depot of said road shall be established, and running thence westward along the Mississippi river to the western boundary of the city of Davenport; thence westwardly to Anamosa, in Jones county, Iowa, or to a point nearer, to connect with a railroad not now running to Davenport aforesaid, as is provided by chapter 159 of the Acts of the Twentieth General Assembly of the state of Iowa; such aid to be by a tax of three per centum, to be levied and collected upon the assessed value, according to the county valuation, of the property of said city of Davenport; one-half of said tax to be levied and collected in the year 1887, and the other half in the year 1888. One-half of the amount of said tax shall be paid to said company when the first ten miles of said railroad from said point of beginning, in said city of Davenport, shall be graded, bridged and tied, and that part of the said line within the limits of the city of Davenport shall be completed for the passage of cars thereon. The other half of the amount of said tax shall be paid to the said railroad company when thirty miles of the said railroad shall be completed for the passage of cars, or a connection be made by said Davenport, Iowa & Dakota Railroad Company, at a shorter distance, with some other railroad, constructed and operated, but not running to said city of Davenport."

The initial point of the proposed road is definitely fixed in the notice as "a point on the levee in the said city of Davenport, *    *    *    between Brady and Main

streets." It is insisted that no particular point is named to which the road shall be completed. It appears from the notice that the general direction of the road shall be towards Anamosa, in Jones county. It is true that the notice does not require that the road shall be built to Anamosa, in Jones county, in order to enforce the collection of the tax. There is the alternative that the road may be built in the direction of Anamosa, to a connection with a railroad not running to Davenport. The record shows that the object of the tax was to secure additional railroad facilities for the city of Davenport; and it is evident that the notice contemplates that, if the object could be attained by making a connection with the Burlington, Cedar Rapids & Northern Railroad, or the Chicago & Northwestern Railroad, by building a line in the direction of Anamosa, constructing the road to such point should be sufficient. There is no uncertainty as to the general direction of the proposed road; and, when the tax was voted, the place to which it was to be constructed was one of two places, but both in the same general direction, and the last half of the tax is to be collectible when thirty miles of the road shall be completed for the passage of cars, or a connection made, at a shorter distance, with some other railroad constructed and operated, but not running to the city of Davenport. In construing the notice as to the line of the proposed road, it must be borne in mind that, to whatever point it may be built, it must be in the direction of Anamosa, in Jones county.

It is claimed that the notice does not state when the work shall be done to entitle the company to the tax. It seems to us that the provision that one-half of the tax shall be paid when the first ten miles from Brady street shall be graded, bridged and tied, and that part of the line in the limits of the city of Davenport shall be completed for the passage of cars, and the other half shall be payable when thirty miles shall be completed for the passage of cars, or a connection made with some other road,

3. ——: ——: desig- nation of time when work is to be done.

sufficiently indicates when the work is to be done by which the tax is to be earned. And we do not think it is necessary that the notice shall give the specific date when the work shall be done. It is sufficient if it provides, as in this case, that the tax shall be payable when a specific amount of work is done.

III. It is next claimed that the tax is void because the stipulation and conditions contained in the notice of the special election do not conform to those set forth in the petition asking the election. The facts in reference to this alleged irregularity in the proceedings are that the petition asked that there be submitted to the electors in the city of Davenport the question whether or not a tax of three per centum shall be levied and collected on the "*assessed value of the property in said city*," and the notice of election provides that the tax is to be levied "*upon* the assessed value, *according to the county valuation*," of the property in said city. It is claimed that, by the terms of the petition, the tax was to be levied upon the city valuation, while the notice requires that it be levied upon the county valuation. The law authorizing the tax requires that the levy be made by the board of supervisors. This plainly implies that the levy must be made upon the county valuation. The board of supervisors are not supposed to have any knowledge of the city valuation. That assessment or valuation is made for the sole purpose of levying city taxes. Now, it appears to us there is no real conflict between the petition and notice, when construed in the light of the fact that the city and township are co-extensive. The levy of a tax on the "assessed value of the property in said city," as provided in the petition, would be a levy on the property of the township, and, under the law, the basis of the levy would be the assessment made by the township assessor.

IV. The petition for the election described the route of the proposed railroad to be from the western boundary of the city of Davenport; "thence northwestwardly to Anamosa, or to a point nearer," etc. The notice described the route from the boundary of the city,

*4. —: —: petition and notice: variance: basis of levy.*

*5. —: —: —: —: route of road.*

"thence *westwardly* to Anamosa, or to a point nearer," etc. It is claimed that this variance is fatal to the validity of the tax. As we have above intimated, there is no uncertainty in any of these proceedings as to the direction of the proposed road. It is to be built in the direction of Anamosa, in Jones county. The fact is that Anamosa is northwest from Davenport. It is north and west, and the notice is not necessarily repugnant to the petition when it describes the line as "westwardly" to Anamosa.

V. It will be observed that the notice of election provides: "One-half of said tax to be levied and collected in the year 1887, and the other half in the year 1888." The election was held on the twenty-fifth day of September, 1886, and the levy of the tax was made by the board of supervisors on the twenty-ninth day of the same month. It is claimed that, under the express conditions of the petition and notice for the election, no levy could be made before the year 1887. We do not think this is a fair construction of the notice of election. It should be construed in the light of the law governing the levy of taxes. The board of supervisors has no power to levy and collect taxes in the same year. Taxes levied in one year are collectible the next year. The clause of the notice above cited should be held to mean that the levy should be made within such time as that the tax would be collectible in the year 1887. The insertion of a comma after the word "levied," in the clause in question, makes this construction quite plain.

VI. Chapter 159 of the acts of the Twentieth General Assembly requires that the clerk of the election shall certify to the county auditor the result of the election, the rate per centum of the tax voted, and the time, terms and conditions upon which the same, when collected, is to be paid to the railroad company, together with an exact copy of the notice under which the election was held; and the same is to be recorded in the

office of the recorder of deeds. These requirements of the law were fully complied with before the order was made levying the tax. The law further provides that the order of the board of supervisors by which the levy is made shall indicate when and in what proportion the tax is to be collected, and upon what conditions it is to be paid to the railroad company. The order of the board shows that, when the levy was made, it had before it the certificate of the clerk of the election, and the levy was made in accord with the notice of the election, but the order does not set out the conditions upon which the taxes are to be paid to the railroad company. It is claimed that this failure to comply with the statute makes the levy of the tax null and void. We do not think that this defect in the order should be held to vitiate the levy of the tax. If the board had refused to levy the tax by reason of a defect in the certificate of the clerk of the election, as in the case of *Minnesota & I. S. R'y Co. v. Hiams*, 53 Iowa, 501, such refusal would doubtless be approved by the court, as it was in that case. But in this case the tax has been levied, and all the stipulations and conditions necessary for the protection of the tax-payer are made of record; and we do not think that the failure of the board of supervisors to insert these conditions in the order should be held to vitiate the levy. It is a mere omission to do that which is in no manner of the essence of the thing done, and does not inhere in the proceeding as a jurisdictional prerequisite. If it should be necessary to the protection of the tax-payer, we do not see any valid objection to the board making an amended order for the guidance of the county treasurer in paying the tax to the railroad company. But that would be an act of supererogation, because the county treasurer is charged with notice of the conditions of payment which are now of record.

We think the order overruling the motion for an injunction must be                                   AFFIRMED.