THE STATE OF KANSAS, *Appellant*, V. HARRY
RABINOWITZ *et al.*, *Appellees.*

No. 17,731.

THE STATE OF KANSAS, *Appellant*, V. HENRY CONRADT,.
*Appellee.*

No. 17,732.

THE STATE OF KANSAS, *Appellant*, V. THEODORE LINCK,
*Appellee.*

No. 17,733.

THE STATE OF KANSAS, *Appellant*, V. NICK BUCATTI,.
*Appellee.*

No. 17,734.

THE STATE OF KANSAS, *Appellant*, V. JOHN BAUM
*et al.*, *Appellees.*

No. 17,735.

SYLLABUS BY THE COURT.

1. NUISANCE—*At Common Law.* At the common law acts done·
in violation of law, or which are against good morals, con-
stitute public nuisances.

2. COMMON NUISANCE — *Kansas Statute — Streets and Alleys.*
The selling and delivering of intoxicating liquors on the
streets and alleys of a city, publicly, repeatedly and per-
sistently, is a common nuisance which may be enjoined by a
court of equity under section 265 of the civil code authorizing·
the granting of an injunction "in the name of the state to·
enjoin and suppress the keeping and maintaining of a com-
mon nuisance."

3. ——— *Injunction.* The fact that the same acts may con-
stitute a public offense is no bar to the maintenance of an
equitable action to enjoin the nuisance.

4. ——— *Use of Streets and Alleys—Injunction—Petition.* In
proceedings brought under the prohibitory law, which pro-
vides, among other things, that all places where intoxicating
liquors are sold, or given away, or kept for sale or delivery,
in violation of law, or where persons are permitted to resort
for the purpose of drinking intoxicating liquors as a bev-
erage, are common nuisances which may be enjoined and
abated at the instance of the state, the occupation and use of·
a street or alley or other public ground, by the defendant,
for the unlawful purpose, may be enjoined, and an averment.

in the petition for the injunction that the defendant had been using, and was still continuing to use, the streets and alleys of a certain city for the sale and delivery of intoxicating liquors in violation of the law is a sufficient description of the place within the meaning of that statute.

Appeals from Leavenworth district court. Opinion filed November 11, 1911. Reversed.

### STATEMENT.

IN the foregoing cases the attorney-general of the state and the county attorney of Leavenworth county filed petitions in behalf of the state, the averments in each being substantially the same. In the Rabinowitz case it was alleged:

"(1) That at the time of the institution of this action the above-named defendants were, and still are, residents and citizens of the city and county of Leavenworth, state of Kansas.

"(2) That for many months before the institution of this action the said defendants were, and still are, engaged in the unlawful sale, barter and delivery of intoxicating liquors within the said city and county of Leavenworth, state of Kansas, in the form and manner as hereinafter alleged and set forth.

"(3) That for many months before the institution of this action the said defendants were, and still are, maintaining and operating a so-called storeroom or warehouse, or a shift, device or subterfuge, at a place called Stillings, in Platte county, state of Missouri, just across the Missouri river, about one mile east of said city of Leavenworth, state of Kansas, at which place the said defendants, at all of the times herein mentioned, have been, and still are, temporarily unloading and storing intoxicating liquors for the express unlawful purpose, intent and design of thereafter selling, bartering and delivering the same wholly within said city and county of Leavenworth, state of Kansas, as herein more fully alleged and set forth.

"(4) That for many months before the filing of the original petition in this action the said defendants have owned, maintained, used and employed, and are still maintaining, using and employing upon all the streets and alleys of the city of Leavenworth, Kan., certain

wagons, vehicles and conveyances, with horses or mules hitched thereto and drivers thereon, for the express unlawful purpose of conveying or carrying said intoxicating liquors across said Missouri river from said town of Stillings, Mo., to and within said city and county of Leavenworth, state of Kansas, and there selling, bartering and delivering said intoxicating liquors to various persons and places, whose names and location are now unknown to said plaintiff, with the express purpose, intent and design, on the part of said defendants, of unlawfully aiding and abetting many of said persons in the violation of the prohibitory laws of said state of Kansas, as herein more fully alleged and set forth.

"(5)   That for many months before the institution of this action the said defendants did, and do still, maintain and operate a local Leavenworth city telephone at their said so-called storeroom or warehouse, or said shift, device and subterfuge, at said town of Stillings, Mo., which said telephone, at all of the times herein mentioned, was, and still is, directly connected with residences and places of business within said city and county of Leavenworth, Kan., over which said telephone the said defendants, their agents and employees, have, at all of the times herein mentioned, and still are taking and receiving telephone orders for said intoxicating liquors at said so-called storeroom or warehouse, or said shift, device or subterfuge, at said town of Stillings, Mo., and thereafter selling, bartering and delivering said intoxicating liquors, so ordered, to said residences, persons and places of business wholly within said city and county of Leavenworth, Kan., in violation of the said prohibitory laws of said state of Kansas, as herein more fully alleged and set forth.

"(6)   And plaintiff alleges that at all of the times herein mentioned it has been, and still is, the unlawful custom, habit or system of the said defendants, their agents and employees, to collect the sale price of said intoxicating liquors, so delivered upon said telephone orders, as aforesaid, wholly and entirely within said city and county of Leavenworth, state of Kansas, in violation of the prohibitory laws of said state of Kansas.

"(7)   Plaintiff further alleges that at all of the times herein mentioned the said defendants have maintained, used and employed a local Leavenworth city telephone at their residence at Second and Ottawa streets and No.

714 Miami street, respectively, in said city of Leavenworth, Kan., over which said telephone the said defendants have, at all of the times herein mentioned, received, and do still receive, telephone orders for said intoxicating liquors from residences, persons and places of business wholly within said city and county of Leavenworth, Kan., and thereafter deliver the same to said residences, persons and places of business, by means of said wagons, vehicles and conveyances, from said so-called storeroom or warehouse, or said shift, device and subterfuge, at said town of Stillings, Mo., or from said wagons, wherever they may be on the streets and alleys of said city of Leavenworth, Kan., and thereafter collect the sale price of said intoxicating liquors wholly within said city and county of Leavenworth, Kan., all in violation of the prohibitory laws of said state of Kansas.

"(8) Plaintiff further alleges that at all of the times herein mentioned the said defendants have authorized, directed and allowed, and do still authorize, direct and allow, the drivers of said wagons, vehicles and conveyances, who are in their employ, and also other agents and employees, whose names are unknown to said plaintiff, to solicit, take and receive orders for said intoxicating liquors at residences, places of business, and of various persons, whose names are unknown to plaintiff, wholly within said city and county of Leavenworth, Kan., and on the streets and alleys of said city, and upon such orders the said defendants have, at all of the times herein mentioned, delivered, and are still delivering said intoxicating liquors to said residences, persons and places of business from said so-called storeroom or warehouse, or said shift, device or subterfuge, at said town of Stillings, Mo., and from said wagons on the streets and alleys of said city of Leavenworth, Kan., and thereafter collecting the sale price of said intoxicating liquors wholly within said city and county of Leavenworth, Kan., all in violation of the prohibitory laws of said state of Kansas.

"(9) And plaintiff further alleges that at all of the times herein mentioned the said defendants have kept, and do still keep, said wagons, vehicles, conveyances, horses, mules and drivers within said city and county of Leavenworth, Kan., especially at night, at places unknown to said plaintiff, and that frequently the said wagons, vehicles or conveyances are kept loaded over

night with intoxicating liquors, which are delivered the next morning to various residences, persons and places of business within said city and county of Leavenworth, Kan., and the sale price thereafter collected wholly within said city and county of Leavenworth, state of Kansas, all in violation of the prohibitory laws of said state of Kansas.

"(10) And plaintiff further alleges that a very large part or proportion of the said places and persons to whom or which said intoxicating liquors are sold, bartered and delivered, in the manner herein alleged, are thereafter selling, bartering and delivering said intoxicating liquors in violation of the prohibitory laws of the state of Kansas; that said defendants well know this to be a fact, that said defendants, at all of the times herein mentioned, have been, and still are, selling, bartering and delivering said intoxicating liquors to them, as herein alleged and set forth, for the express unlawful purpose and with the express unlawful intent and design of aiding and abetting them in violating said prohibitory laws of said state of Kansas.

"(11) And plaintiff further alleges that the said defendants have adopted, employed and used, and are now adopting, employing and using the said so-called storeroom or warehouse, at said town of Stillings, Mo., and said wagons, vehicles, conveyances, horses, mules, drivers, telephones, and all other property and means employed, as herein alleged, purely and simply as devices, shifts and subterfuges to attempt to avoid and violate the said prohibitory laws of said state of Kansas.

"(12) And plaintiff further alleges' that said defendants have, at all of the times herein mentioned, pretended, and do still pretend, to be engaged in interstate commerce in selling, bartering and delivering said intoxicating liquors, as herein alleged, but plaintiff alleges that they have been and are conducting said unlawful business, as herein alleged, wholly within said state of Kansas, and are not *bona fide* engaged in any interstate commerce business.

"(13) Plaintiff further alleges that at all the times herein mentioned the said defendants have received, and do still receive, said intoxicating liquors at their said so-called storeroom or warehouse, or said shift, device or subterfuge, at said town of Stillings, Mo., in original packages, and that said intoxicating liquors are there taken out of said original packages by the

said defendants and thereafter sold, bartered and delivered to said residences, persons and places of business within said city and county of Leavenworth, Kansas, in other than their original packages, suitable for the use and convenience of said residences, persons and places of business within said city and county of Leavenworth, Kansas.

"(14) Plaintiff further alleges that this is an action in which the state of Kansas is entitled to an injunction, and that unless said defendants, their agents and employees, are restrained and enjoined from doing and performing the unlawful acts and omissions herein complained of, they will continue in the violation of said prohibitory laws of the said state of Kansas in the manner and form herein alleged and set forth.

"(15) Plaintiff further alleges that a reasonable attorney's fee herein is the sum of five hundred dollars.

"WHEREFORE, And because of all the matters and things herein alleged, said plaintiff prays and demands that a temporary injunction issue herein against said defendants, restraining them and their agents and employees from doing any of the unlawful acts herein complained of; that they be enjoined from conducting said unlawful business; that they be enjoined from maintaining, using and employing said wagons, vehicles and conveyances, horses, mules, telephones, and any other property, in the unlawful manner herein alleged; that upon the final determination of this action said injunction be made permanent; that said wagons, vehicles, conveyances, horses, mules, telephones and all other property used in said unlawful business be declared common nuisances and that the same be abated; that said plaintiffs have and recover its costs herein, including said attorney's fee of $500, and for such other and further relief as said plaintiff may be entitled to."

The defendants in each case filed a demurrer, alleging that the petition did not state facts sufficient to constitute a cause of action, which was sustained by the court.

The state appeals.

*John S. Dawson,* attorney-general, *S. M. Brewster,* special assistant attorney-general, *Lee Bond,* county attorney, and *Arthur M. Jackson,* for the appellant.

*A. E. Dempsey,* and *F. P. Fitzwilliam,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Accepting the averments of the petition as facts, was the state entitled to an injunction under either the general provision of the code which authorizes the enjoining of a common nuisance, or the section of the prohibitory liquor law which provides for enjoining the maintaining of a place where intoxicating liquors are sold or given away in violation of law or where persons are permitted to resort for the purpose of drinking such liquors?

If the provision of the prohibitory law for enjoining or abating nuisances was left out of consideration, or had never been enacted, there would still be sufficient authority for enjoining the nuisance in question. The code specifically provides that "an injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance." (Civ. Code, § 265.) This provision gives direct authority to the state for the injunction sought if the acts and things charged against appellees in the petition constitute a common nuisance. At the common law, acts done in violation of the law, or which are against good morals or public decency, and which result in injury to the public, constitute a public nuisance. (1 Wood on Nuisances, 3d ed., § 17; Joyce on Nuisances, § 5; 6 Cur. Law, 828.)

A nuisance is public if it affects the community at large or if it affects a place where the public have a right to and do go, such as a park, street or alley, and which nuisance necessarily annoys, offends or injures those who come within the scope of its influence. That the illegal act is publicly, repeatedly and persistently committed in the streets of a city, thus offending and injuring all who use the streets and who necessarily come within the range of such an influence, is an impor-

tant factor in determining whether it constitutes a common or public nuisance. For instance, it has been held that "streetwalking" might be stopped, as it was inhibited by the common law (*Braddy v. City of Milledgeville,* 74 Ga. 516) ; also, that the setting up of a menagerie and circus in a graveyard, which had been dedicated to a municipality, was a public nuisance (*City of Kansas City v. Lemen,* 57 Fed. 905) ; and that the exhibition of a stud horse on the streets of a town amounted to a nuisance (*Nolin v. The Mayor, etc.,* [Tenn.] 12 Yerger, 163). The singing of ribald songs in a loud and boisterous manner in the streets for ten minutes was held to be a nuisance (*State v. Toole,* 106 N. C. 736, 11 S. E. 168), and the same court held that the repeated use of profane and blasphemous language on the public streets in the hearing of many persons passing and repassing was a public nuisance (*State v. Chrisp,* 85 N. C. 528). The discharge of fireworks and of heavily charged explosives on the public streets in a densely populated part of a large city was held to be a public nuisance. (*Speir v. City of Brooklyn,* 139 N. Y. 6, 34 N. E. 727; *Landau v. City of New York,* 180 N. Y. 48, 72 N. E. 631.) In addition to these considerations, it has been held by our own court that every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated is a public nuisance. (*The State, ex rel., v. Crawford,* 28 Kan. 726.) In the present case it is alleged that the offensive and injurious acts were committed on the public streets and alleys of a large city, and these acts, it appears, are injurious to public morals, contrary to the policy of the state and in direct violation of statute. It is further shown that the streets have been thus openly, persistently and illegally used for a period of many months prior to the bringing of this action. It is clear that the charge made against appellees constitutes a common nuisance at the common law and is one which may

properly be enjoined under the general provisions of the code.

The fact that the maintaining of a common nuisance is made a public offense, or that special provision is made for its abatement, is not necessarily a bar to the enjoining of a public nuisance by a court of equity. While courts of equity can not be used to punish crime or enforce the criminal laws, still, if the acts done and threatened to be done are such as to bring them within the jurisdiction and power of a court of equity, its arm is not shortened by the fact that the same acts may be denounced as a crime. The mere criminality of an act, whether it be a public or private nuisance, will not deprive the injured party of his equitable remedies nor shelter the wrongdoer from the judgment of a court of equity. In *The State, ex rel., v. Crawford,* supra, is was said:

"While it is unquestionably true that the keeping of the saloon in question is a criminal offense, and its operation involves the commission of many criminal offenses, yet we can not think that these facts can possibly take away any of the jurisdiction which courts of equity might otherwise exercise." (p. 735.)

The supreme court of the United States held, in *Mugler v. Kansas,* 123 U. S. 623, that:

" 'In case of public nuisances, properly so called, an indictment lies to abate them and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction.' (2 Story's Eq. §§ 921, 922.) The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual and permanent remedy than can be had at law. They can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and by perpetual injunction protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary juris-

54—85 KAN.

diction, especially where a nuisance affects the health, morals or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury." (p. 672.)

The question was before our court in the recent case of *The State v. Lindsay*, ante, p. 79, 116 Pac. 207, where it was said:

"Courts of equity are reluctant to use the process of injunction where the remedy by indictment or information is efficacious, but will not hesitate where the remedy is not adequate and it is necessary to protect the rights of the public or an individual. A court is not powerless to prevent the doing of an act merely because it is denounced as a public offense." (p. 83. See, also, *In re Debs, Petitioner*, 158 U. S. 564; *State ex rel., v. Canty*, 207 Mo. 439, 105 S. W. 1078; *Vegelahn v. Guntner*, 167 Mass. 92, 44 N. E. 1077; *The Columbian Athletic Club, ex rel. McMahan, v. State*, 143 Ind. 98, 40 N. E. 914; *The North American Ins. Co. v. Yates*, 116 Ill. App. 217; *Commonwealth v. McGovern*, 116 Ky. 212, 75 S. W. 261.)

It is said that the statutory remedy for the punishment and abatement of common nuisances is adequate, and therefore injunction is not necessary nor available. In the first place, the remedy by prosecution is only applicable to existing nuisances, and can not reach future illegal acts and nuisances which the scheme of appellees contemplated. According to the averments in the petition, appellees are doing the illegal acts in many places throughout the city at the same time, and are moving up and down the streets of the city, rendering it difficult to trace their operations, and are conducting the business through so many agencies and in such devious ways that a multiplicity of prosecutions and proceedings would be necessary under the remedies provided by the prohibitory law. The migratory character of the nuisances, the number of them, the persistence of appellees in their unlawful action, and the various subterfuges, shifts and devices employed by them in

committing public nuisances, show clearly enough that criminal prosecution would be an inadequate remedy. It is a well-recognized rule that equity will take jurisdiction to prevent a multiplicity of suits. A court of equity can prevent threatened nuisances, as well as restrain and abate existing ones. It may, in a single proceeding, put an end to those in progress and perpetually enjoin those in contemplation.

The ground of adequacy of legal remedies, however, is not a very strong or important consideration in cases like this, where the express right is given to the state to enjoin and suppress the maintaining of common nuisances. It was said in *The North American Ins. Co. v. Yates,* 116 Ill. App. 217, that, "independent of statute, the state may file a bill to enjoin the violation of its laws where the acts complained of are injurious to the public. And it is immaterial that such acts are punishable under the criminal statute, or that there is an adequate remedy at law, or that the complainant has suffered no injury." (p. 220.) In speaking of the jurisdiction of a court of equity in cases of this kind it has been said that "this jurisdiction is founded upon the ability of equity to prevent irreparable mischief and vexatious litigation and to furnish a more complete remedy than can be had at law. The remedy of indictment for a public nuisance is not an adequate remedy at law precluding the remedy by injunction." (21 A. & E. Encycl. of L. 703.)

There are sufficient grounds alleged for invoking the jurisdiction of a court of equity to enjoin and suppress public nuisances under the general provision of the code, but we think that injunction will also lie under the provisions of the prohibitory law. It provides that:

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of the law, and all intoxicating

liquors, bottles, glasses, kegs, pumps, bars and other property kept in and used in maintaining such a place, are hereby declared to be common nuisances." (Laws 1901, ch. 232, § 1, Gen. Stat. 1909, § 4387.)

"The attorney-general, county attorney, or any citizen of the county where such a nuisance as is defined in section 1, chapter 232, Session Laws of 1901, exist, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same," etc. (Laws 1903, ch. 338, § 1, Gen. Stat. 1909, § 4388.)

The contention of appellees is that the averments of the petition of the state do not sufficiently describe the place, or, rather, do not describe such a place as is contemplated by the foregoing statute. They allege, in effect, that appellees carry on their unlawful business and create a nuisance on the streets and alleys of the city. It is true, as contended, that ordinarily such unlawful business· is conducted and such nuisances are maintained in houses, apartments and rooms, and in proceedings brought under the statute quoted it has been said that the place should be so described that those interested can identify it. It is necessary that the description should be so definite that the parties can. understand the scope of the judgment, and so that officers called on to abate the nuisance may be able to identify it, and so that all can know the extent of the place to which the injunction ordered applies. However, the statute does not provide that the place must be in a building or enclosure nor does it fix any limit on the dimensions of such a place. It was held in *The State v. Walters,* 57 Kan. 702, 47 Pac. 839, that such a nuisance might be maintained on open ground and that two lots of a certain block in a city was a good description. In *The State v. Dykes,* 83 Kan. 250, 111 Pac. 179, a nuisance proceeding, the defendant was enjoined from maintaining a place in a certain county, and it was held that this blanket judgment, although broader than the charge against him, was not void. It was

alleged and shown that he sold beer kept in a barrel in an alley, and that part of the alley so occupied and used by him was held to be a "place" and the testimony sufficient to justify a finding that he was maintaining a nuisance within the meaning of the law. It was said:

"The want of other 'paraphernalia' did not prevent the spot occupied from being a 'place' within the condemnation of the statute, nor did its location in an alley prevent his being its 'keeper,' so long as he used it for his own ends." (p. 252.)

As the statute does not prescribe the character or extent of the place, the attorney-general or county attorney, in charging the maintaining of a nuisance, may make the description of the place as extended or limited as the facts and circumstances of the case may warrant. It may be in a building or in a room in it, or it may be on an open lot, or a block, or it may be in a field, or a park. As we have seen, it may be in an alley, and therefore it may be in a street. It was undoubtedly the intention of the legislature that every place in which a nuisance was maintained, wherever located and whatever the size or extent, should be abated. Ownership of the ground on which the nuisance is kept is not essential to the exercise of the power of injunction, as the Dykes case determined that the place might be on public ground. If the place of the nuisance is public the court must adopt methods of abatement suitable to the place and the situation. There could, of course, be no lien obtained on the premises, the place could not be padlocked or closed, neither could it be removed or destroyed. A nuisance may be abated by injunction or by some of the other processes mentioned. The injunction process is peculiarly applicable to the abatement of a nuisance kept in streets and alleys, or in any part of the public grounds of a city. The fact that a person moves backward and forward in the described place in conducting his unlawful business will not serve to protect the culprit nor deprive the court of the power

to enjoin him from continuing the nuisance in any part of the place. An offender could not get beyond the reach of an injunction if he took a push cart, loaded with intoxicating liquors, and moved it about from one place in a park to another while making sales, and in a proceeding brought against him it would be sufficient to charge that he maintained a nuisance in the park. The same would be true if he made such use of a house-boat which he moved up and down the river in the center of a city. And it would be clear that if he carried on his business from a wagon, which he moved about in the busiest section of a city, that so much of the streets as he used might be described as the place of the nuisance. If the nuisance is of an ambulatory character and the offender is moving it from point to point over the city, and is thus illegally using, to some extent, all the streets and alleys of the city, no reason is seen why such streets and alleys may not be described as the place of the nuisance nor why the offender may not be enjoined from maintaining a nuisance on any street or alley of the city. Blanket injunctions covering a wide scope of territory, when the nuisance extends over only a small part of such territory, will not be issued, but the magnitude of the place and the range of the injunction must depend on the methods of the defendant and the circumstances of each case. In the case of *State v. City Club,* 83 S. C. 509, 65 S. E. 730, cited by appellees in support of the contention that an injunction can not reach so extended a place as that described, it was held that a general blanket injunction covering the whole of the state was not warranted, but it also recognized that it might be as extended as the devices and operations of the defendant in conducting the unlawful business and in keeping the nuisance. After deciding that there was no error in refusing an injunction restraining sales of

The State v. Rabinowitz.

liquor throughout the state and independently of the place where the nuisance existed, the court said:

"Possibly circumstances may be such as would justify the court in enlarging the sphere of its injunction, as where the court has reason to believe the offender, after injunction, will shift his nuisance to another place, so as to render the injunction practically useless. The court might prefer not to chase the offender from place to place, but might head him off by a broader restraining order." (p. 515.)

The allegations of appellant show such conduct and circumstances in this case as were forecasted in the cited case, and they afford good grounds for enlarging the sphere of the injunction to the extent of the place described in the petition. The restraining power of the court as given by the statute is broad enough to reach the wrongdoer, whether he is in motion or stationary, within the described place, and however large the place of his operations.

It is suggested that the sales of liquor, taken from a warehouse in Missouri and brought into Kansas, where it was sold and delivered to purchasers, can not be enjoined as it would be an interference with commerce between the states. It appears from the petition that the sale and delivery of the liquor was made by the appellees themselves and that the delivery was made and the sales consummated within the state. The appellees were, therefore, punishable under the laws of this state, and the nuisance maintained by them in Kansas was subject to the restraining power of the district court. Parties can not escape the condemnation of the law by storing liquors beyond the state line and then carting them back into the state, making periodical or occasional trips to certain places where the liquors are sold, and delivering them to persons on this side of the state line. They can not peddle the liquors up and down the highways of the state without subjecting

themselves to the penalties of the prohibitory law and the restraining power of courts of equity.

According to the averments of the petition the appellees are resorting to a number of cunningly devised shifts and subterfuges intended to baffle the officers and defeat the enforcement of a law enacted for the protection of public morals, public health and public safety. Knowing the policy of the state and the prohibition of a traffic that is conceded to be the greatest source of vice and crime and poverty and sorrow, they employ the tricks and fraudulent means enumerated to bring in and sell the prohibited liquors. They flagrantly undertake to thwart the policy of the state and contemptuously defy the law and its officers; but the courts will look through such pretenses and subterfuges and hold them responsible for their real intent and acts. Under the averments of the petition they are to be regarded as outlaws who are selling and delivering liquors and creating common nuisances within the state, and if the nuisances are shown to exist as alleged it is the manifest duty of the court to perpetually enjoin them.

The demurrers should have been overruled in each of the cases. The judgments are therefore reversed and the causes remanded for further proceedings.