## WATKINS *et al. v.* WILKERSON.

1. The pleadings in this case are somewhat meager and inartificial. The evidence, as brought to this court, is confusing and lacking in clearness. But from the pleadings and evidence as they appear in the record, this court can not say that the presiding judge abused his discretion in granting a temporary injunction against the defendants before the court.

(a) Under the bill of exceptions and the assignments of error, complaining of the grant of the injunction upon the hearing, the order granted by the presiding judge when the petition was presented to him is not before this court for review, and no decision is made as to its propriety and correctness.

2. The demurrer to the petition was not before the trial court to be passed on as such, but only to be considered as to whether or not an interlocutory injunction should be granted.

(a) Under the pleadings, evidence, and bill of exceptions, this court can not say that the demurrer presented an insuperable objection to the granting of a temporary injunction.

3. The judgment now rendered does not prejudice the rights of the defendants to insist upon the demurrer as such at the proper time.

4. The prayer for injunction contained in the petition was as follows: "And that the said club, its management, and all members thereof, together with its managers and agents, be enjoined from keeping or maintaining any buffet, saloon, locker-club, or a place by any other name or without name for the illegal sale of such liquors, in said building or elsewhere." The order setting the time for the application for injunction to be heard included the following: "It is further ordered, that, in the meantime and until the hearing, the defendants be and they are hereby restrained and enjoined as prayed in this petition." The order granting the injunction, on the hearing, recited certain facts which the presiding judge considered had been made to appear, and certain expressions of opinion in regard to the character of the club. The entire provision in regard to the granting of the injunction was contained in these closing words: "Let the injunction heretofore granted continue of force." *Held,* that this court does not commend the practice of adjudicating facts in the order granting an interlocutory injunction and setting forth the injunction granted merely by reference to an order granted when the petition was presented and set down for a hearing, which in turn refers to the prayers of the petition in order to ascertain the nature and extent of the injunction granted.

5. On such a hearing the presiding judge should not undertake to finally adjudicate questions of fact or to grant a permanent injunction. *Cassidy v. Howard,* 140 *Ga.* 844 (80 S. E. 1); *Bleyer v. Blum,* 70 *Ga.* 558.

6. Where the allegations of a petition were that the defendants were operating and maintaining a "blind tiger," or liquor nuisance, at a particular place, by there selling spirituous, malt, and intoxicating liquors in violation of law, and there was no contention that the defendants were maintaining elsewhere a similar nuisance, either in connection with, or independently of, the one alleged to exist at the place designated in the petition, nor even that the defendants were contemplating

or intending to elsewhere create and maintain such a nuisance, the judge was not authorized to grant an interlocutory order enjoining the defendants from maintaining a nuisance, not only at the place designated in the petition, but "elsewhere." Direction is given that the order granted be modified in accordance with the rulings here made.

DECEMBER 19, 1913.

Injunction. Before Judge Wright. Floyd superior court. May 28, 1913.

*Eubanks & Mebane,* for plaintiffs in error.
*Seaborn Wright* and *Graham Wright,* contra.

FISH, C. J.  C. L. Wilkerson brought his petition based on the Civil Code, § 5335 et seq., against the Hill City Club, Bart Watkins, and John Saxon, alleging: that the club has and maintains "a place consisting of all or a part of the second floor of building known as 415½ Broad Street in the City of Rome, occupied by said Hill City Club; that Bart Watkins and John Saxon have the management and control of said club, situated as aforesaid, and that the said club is running and has been running for the last three months in said building under said management as aforesaid; that said club as so operated and maintained is a blind tiger within the means [meaning] of the law of this State, and is engaged in the illegal traffic and sale of liquor, contrary to the laws of the State of Georgia; that said club and its management have received large profits from the sale of spirituous, malt, and intoxicating liquors and beers continually at the said club for the past three months; that the said club and its management are keeping and maintaining in said room as aforesaid a nuisance as defined by the laws of this State; and that, in consideration of the premises and of the foregoing allegations, the same is a continuing nuisance, and as such is subject to be regulated and abated by the equitable relief hereinafter prayed." The petition was served on Bart Watkins and John Saxon each personally. There is no entry as to service referring to the Hill City Club. A demurrer on various grounds was filed by "the defendants." "The defendants" also answered. Both sides submitted evidence on the interlocutory hearing. "The defendants" excepted to the order granted on such hearing.

The rulings announced in headnotes one to five, inclusive, do not require elaboration.

The prayer for injunction, which was adopted by reference to a

part of the order, or is explanatory thereof, prayed, not only that the club and its managers and agents be enjoined from keeping or maintaining the place designated in the petition, for the illegal sale of liquors, but also from keeping and maintaining any buffet, saloon, locker-club, or place by any other name or without a name for such purpose, there or elsewhere. There was no allegation in the petition, nor anything therein, which even intimated the keeping or the intention of keeping or maintaining by the club, or its managers or agents, of any place for the illegal sale of liquors elsewhere than at the club-rooms particularly described in the petition. Nor was there any evidence submitted on the hearing which in any way tended to show that the club, or its managers or agents, were selling liquor at any other place than the described club-rooms, or that they or any of them had any purpose to sell liquor elsewhere. The order granted, by reference to the prayer, was broad enough to enjoin the keeping or maintaining of any buffet, locker-club, or any place with or without a name, not only at the place designated in the petition as a "blind tiger" or liquor nuisance, but at any other place whatever. The statute (Civil Code, § 5335) declares that "Any place commonly known as a 'blind tiger,' where spirituous, malt, or intoxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such, as now provided by law," etc. The evident purpose of the legislature in adopting this statute was to furnish a civil remedy to the citizens of each county for the suppression of the illegal sale of liquor therein. To accomplish this end, *"any place . . where"* the designated liquors are sold in violation of law was defined to be a nuisance; that is, such place was in effect declared to be *per se* a public nuisance, and it was prescribed that *"the same"*—that is, such *place*—might be abated or enjoined as a nuisance, as the law provided at the date of the statute. In the language of the Civil Code, § 4457: "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance." We do not say that this must be taken as a complete definition of the term; for, while it is the definition generally given of a nuisance, it must be, in view of the wide range of subject-matter embraced under the term nuisance, quite impossible to frame any general definition that will be exact

and exhaustive. The code definition, however, seems to make a *thing,* as distinguished from a human being (as the word "anything" is used), or a condition of circumstances the result of an act or acts, a nuisance; and when the statute under discussion makes "any place . . where" liquor is sold. (for, since the passage of the prohibitory law, it can not be sold legally anywhere in the State) a nuisance, and provides that such place, which is declared to be a nuisance, may be abated or enjoined as the law provides, it seems obvious that such place, which is made a nuisance by the illegal sale of liquor there, is the thing which may be abated, and that one way of accomplishing this is by enjoining the person doing the acts, which makes the place a nuisance, from further doing them. Where, therefore, as in the present case, it is sought to abate a designated place as a nuisance by enjoining its further maintenance by the person alleged to be operating or maintaining the same, and the sole issue presented by the pleadings is whether a nuisance, under the statute, is being maintained at such place by the defendant, and there is no contention that he is maintaining in connection therewith, or independently thereof, or is even threatening or contemplating the establishment or maintenance of any other such nuisance elsewhere, it is error on interlocutory proceedings, as it would be also on final trial, to go beyond the scope of the case made by the allegations of fact set out in the petition and the evidence, and to enjoin the defendant from operating or maintaining any other nuisance than the one designated in the petition, or one connected therewith as part of a scheme or device to operate or maintain it.

Of course we do not mean to hold that, in cases to enjoin liquor nuisances under the statute (Civil Code, § 5335), the injunction must be confined strictly to an exact spot, or particular room; but our holding is, that where, as in the case at bar, it is alleged that the defendant is maintaining a nuisance at a designated and particularly described place, or rooms, or apartment, selling liquor there in violation of law, and there is no contention that the defendant is maintaining a similar nuisance elsewhere, either in connection with or independently of the one aimed at in the petition, or is preparing, threatening, or contemplating the creation or maintenance of a liquor nuisance elsewhere, a general blanket injunction covering the whole State is not warranted. See, on the

subject: 17 Am. & Eng. Enc. Law, 322; Clark v. Riddle, 101 Iowa, 270 (70 N. W. 207); State v. Frahm, 109 Iowa, 101 (80 N. W. 209); Lyon v. City Club, 83 S. C. 509 (65 S. E. 730); State v. Rabinowitz, 85 Kan. 841 (118 Pac. 1040, 39 L. R. A. (N. S.) 187). Whether in certain circumstances, other than as exhibited in the present case, it would be proper to grant a blanket injunction is not here for decision.

If upon final trial an injunctive decree should be entered, then whether any subsequent act of the defendants will amount to a violation of its terms, whether done directly, or indirectly by any device or subterfuge to evade it, will be in order for determination upon proper proceedings. The granting of an interlocutory injunction against the defendants, enjoining them from keeping or maintaining a nuisance at the place designated in the petition by there selling liquors in violation of law, is affirmed. But direction is given that the order be so modified as to conform to the rulings herein made, by striking therefrom so much of it as amounts to a final adjudication of the facts, and as temporarily enjoins the defendant from maintaining a nuisance "elsewhere" than at the place described in the petition, and that it be further so modified as to show that the injunction granted is interlocutory in character.

*Judgment affirmed, with direction. All the Justices concur.*

LUMPKIN, J., concurring specially. I concur in the decision, but am of the opinion that, under the statute, the injunction may be somewhat broader in its territorial scope than my brethren have determined. Prior to the passage of, or aside from, the act commonly known as the "blind-tiger" act, and under the general law in regard to nuisances, a public nuisance must be abated by the public authorities. A person injuriously affected may proceed to abate or enjoin a private nuisance. If a public nuisance causes special damages to an individual, in which the public do not participate, it stands to that extent as a private nuisance, and may give a right of action to the individual. Civil Code (1910), §§ 4454, 4455, 4456, 5538. Thus, if a private individual seeks to enjoin a public nuisance, the element of special injury to him or his property is involved, and therefore the location of the nuisance relatively to his property or residence becomes material. Unless such an injury to the individual be shown, he can not proceed against persons who create a public nuisance. So the location of

a thing—like an obstruction in a street—sometimes is essential to make the thing a nuisance. But such is not the case in regard to a "blind-tiger" nuisance.

Prior to the time when the act of 1899 was passed, what was known as the local-option law was in force. In many counties of the State the sale of liquor was illegal. In others it was legal. The illegal sale of liquor, or the keeping of what was called "a blind tiger," was not per se a nuisance giving any citizen a right of action, and gave the individual no right of action, unless perhaps where, by virtue of the location of the place with reference to his property or residence, the attending disorder or manner of the conduct of the business, or the like, special injury to the individual resulted. The punishment of persons illegally selling liquors, or keeping a "blind tiger," was left to the criminal laws. The legislature seemed to be of the opinion that this did not furnish a sufficient remedy to suppress the evil. They therefore passed the act of 1899, now embodied in the Civil Code, § 5335 et seq. That act in effect declared the keeping of a "blind tiger" to be per se a nuisance, not to an individual injuriously affected by its proximity, but to all the citizens of the county in which it was, and conferred upon any citizen or citizens of such county the right to proceed to suppress it. The act mentioned was not dealing with the question of special injury to the plaintiffs, or of exact location with reference to them, creating any peculiar injury or hardship to them, but it declared, in effect, a certain thing to be a nuisance, and authorized any citizen or citizens of the county to apply for an injunction to abate it. In 1907 the legislature passed a law which prohibited the sale of alcoholic, spirituous, malt, or intoxicating liquors in any county of the State. Penal Code (1910), § 426. Thus every county in the State under this act was placed in the same situation as some counties had been in before its enactment, relatively to this evil, which was declared to be a nuisance. Therefore it became a nuisance equally in each county of the State.

In *Thompson* v. *Simmons & Co.*, 139 *Ga.* 845, 848 (78 S. E. 419), in dealing with the legislative purpose in passing the act of 1899, Presiding Justice Evans said: "The statute reflects a legislative intent to extend to citizens in a county where a 'blind tiger' is located an additional remedy to suppress the illegal sale of spirituous, malt, or intoxicating liquors. The scope and nature of the

remedy is apparent when we consider the purpose of the statute. At the time of its passage the sale of intoxicating liquor was prohibited by law in the majority of the counties in this State, and in others was permitted only under stringent regulation. In the 'dry' counties especially this prohibitive legislation did not entirely suppress the sale of intoxicants. In some instances, for various reasons, the vendors of intoxicating liquors escaped prosecution or conviction, and yet the demoralizing effects of the illegal business were so apparent that the need of a civil remedy for the protection of the people in the vicinity of the place where intoxicating liquors. were being unlawfully sold came under the notice of the legislature. The evil to be corrected was the illegal sale of intoxicating liquors; the remedy supplied by the legislature was a civil suit to abate or enjoin the sale of such liquors as a nuisance." He then referred to the title of the act which contained the words "to declare a nuisance any place where spirituous, malt, or intoxicating liquors are sold in violation of law," etc., as being sufficiently broad to cover any place where such unlawful sales were made, irrespective of the manner in which the sales were made, whether openly or furtively. He then added: "The term 'blind tiger' is a colloquialism, or slang expression. In some instances it is applied to the vendor of the liquor; in others it is used to describe the place of sale; and in still other instances it is employed to characterize the device of the vendor in effecting the sale. In our statute the term is used in its generic sense." What was meant by a generic sense, unless it comprehended all of the species within the given genus? The opinion also quoted approvingly the following statement of Cobb, J., in *Legg* v. *Anderson,* 116 *Ga.* 401 (42 S. E. 720) : "A law having for its purpose the suppression of an acknowledged existing evil, which is destructive of the public peace and order as well as the welfare and happiness of individuals, should not, of all laws, be frittered away by construction." *Lofton* v. *Collins,* 117 *Ga.* 434 (43 S. E. 708, 61 L. R. A. 150).

The decisions above cited show clearly what was the evil which produced this legislation, and what remedy was provided by it. The evil was, not that liquors were unlawfully sold in a particular store, room, or house, but that they were unlawfully sold especially in a "dry" county. The remedy was by declaring that this was a public nuisance, and conferring on any citizen or citizens of the

county the right to abate it. This provision in regard to any citizen or citizens of the county, to my mind, carries with it an indication that the legislature was dealing with what they deemed an abatable nuisance within the county, and not merely one located in a particular spot in the county or so close to the premises or residence of some individual that it might work a special hardship to him. It is true that section 5335 says that "Any place commonly known as a 'blind tiger,' where spirituous, malt, or intoxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such, as now provided by law, on the application of any citizen or citizens of the county where the same may be located." It is also true that the two succeeding sections make provision for service where the parties carrying on the nuisance (that is, the business) are unknown or concealed, and for breaking open the "blind tiger," and arresting the inmates. But did the first-cited section, in referring to the nuisance to be abated, use the word "place" as meaning merely a piece of ground, or a particular room or store or building? When the statute referred to abating "a place," did it mean to tear down the house, or to destroy the store, or was the real purpose of the legislature to provide a method for abating the nuisance? If we are to construe this section of the code with literal and verbal exactness, how would you enjoin "a place"? Surely the legislature did not mean to abate the "place" and leave the nuisance unmolested. If, literally speaking, the place was to be abated, then shall a landlord suffer because his tenant, without his knowledge, illegally sells liquor upon the premises? Strictly speaking, the place belongs to the landlord, not to the tenant. I do not think that any such restricted or literal meaning should be given to the statute. Moreover the expression is, "abated or enjoined." The history of the legislation, the condition existing when the act of 1899 was passed, the fact that some counties were then "dry" and some not, the declaration, in effect, by that act that illegal sales of liquors should be a nuisance, and that any citizen or citizens of the county might proceed to abate it, followed by legislation which put every other county in the State in the same situation as those which were formerly "dry," all indicate to my mind that the legislature intended that an injunction might be granted which would suppress the nuisance thus arising within the county, and that an injunction

sufficiently broad in its terms to prevent the carrying on of the nuisance within that county may be granted. The rule of construction, by looking to the old law, the mischief, and the remedy, is familiar. I do not think that an injunction can broadly be granted to restrain the conduct of the nuisance "elsewhere," that is anywhere else. Such is not the statute. But I am of the opinion that it can be enjoined from being carried on within the county; and that as my brethren are requiring the order of the judge of the superior court to be modified, because it is too broad, they should not require it to be too narrow.

If this is not true, then when any citizen or citizens of the county file an equitable petition and enjoin the keeper of a "blind tiger" from conducting the illegal business which has been declared to be a nuisance, if the injunction applies only at the particular place within the county where the business is being conducted, then all the proprietor has to do is to remove his illegal business into another store, or across the street, or around the corner—anywhere in the county except in the identical place where he was conducting the nuisance, and he will be entirely free from the injunction granted. Such a construction of the act would give it no substantial effect except to require keepers of "blind tigers" to remove to another place within the county as often as they may be enjoined from conducting the nuisance, though, as will be seen above, we have declared the nuisance to be the illegal sale of liquor within the county.

I am aware that a different construction may have been given to certain statutes in other States. But the meaning and scope of each statute depends on its own terms, and, for the reasons stated, I think that our statute should receive the construction above indicated. Nor is it any reply to this view to say that a possible nuisance at some future time and at a different place will not be enjoined. It is alleged that this nuisance is now present and active in the county. It is sought to abate it and prevent its continuance. If there is nothing to indicate a probable continuance of illegal sales in the county, there is nothing to enjoin, and the judgment is erroneous. If there is enough to show a probable continuance of the nuisance in the county, then the injunction should be broad enough to stop it. I do not think "any place" means that the nuisance can only be enjoined so far as it may be conducted

at one particular spot in the county. Suppression of a nuisance (which we have declared to arise from the illegal business itself) rather than exact locality, was uppermost in the minds of the legislature. Indeed, my brethren are affirming a judgment granting an injunction restraining the defendants from continuing to conduct an illegal business or from making illegal sales of liquor. In doing so they recognize that this constitutes the nuisance. They do not insist that the judge must enjoin the place regarded as a locality, but the nuisance there located. We all agree that the real thing to be done is to enjoin the nuisance—the continuing to make illegal sales; but they think that the effect of the preventive measure should be confined to the specific place, while I think the injunction may run throughout the county. The addition by the legislature of provisions to further aid in abating the nuisance where the parties can not be found or conceal themselves, and providing for breaking open the room or house, etc., ought not to restrict the main provision. Aids ought not to cut down the thing to be aided.