No. 21,981.

THE STATE OF KANSAS, *Appellee*, V. JOHN MACEK, *Appellant*.

SYLLABUS BY THE COURT.

1. LIQUOR LAW—*Information—Permitting Others to Keep Liquor on Premises—"Persistent Violator."* An information containing appropriate recitals to warrant the classification of a defendant as a persistent violator of the prohibitory law, and charging that he did unlawfully permit another person to have and keep intoxicating liquors on premises controlled by defendant, is not subject to a motion to quash.

2. SAME—*Information—Description of Premises.* A place where intoxicating liquors were unlawfully kept was sufficiently described as "Lot No. 46 in the original town of Ringo, Crawford county, Kansas."

3. SAME—*No Second Jeopardy.* A defendant who has been acquitted of a charge of unlawfully keeping and having in his possession intoxicating liquors is not put in jeopardy a second time for that offense by being afterwards prosecuted on the charge of permitting another person to have and keep intoxicating liquors on premises controlled by defendant, although the time and the place were the same in the second offense charged as in the first.

4. SAME—*Various Offenses—Pending at Same Time.* The fact that a defendant has been bound over by a justice of the peace to answer in the district court for various offenses under the intoxicating liquor acts does not prevent further proceedings being taken against him before that justice, or another justice. Defendant may be subjected to further arrests, and subsequently bound over, for other and additional offenses against the prohibitory law, or for any other violations of the crimes act.

5. SAME—*Transcript from Justice Court.* No prejudice occurred to defendant in filing in the district court a transcript of the proceedings in the justice court ten days before those proceedings were formally certified.

6. SAME—*Filing of Verdict.* A verdict, duly recorded, is valid, although it does not show the date upon which it was filed.

7. SAME—*"Bone-dry Law" Constitutional.* The "bone-dry" law, chapter 215 of the Laws of 1917, is a valid exercise of the state's police power, designed to secure a more effectual enforcement of the state's earlier antiliquor legislation, and it offends neither state nor federal constitution.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed May 10, 1919. Affirmed.

*D. H. Wooley,* of Girard, and *Thomas W. Clark,* of Pittsburg, for the appellant.

*Richard J. Hopkins,* attorney-general, *A. B. Keller,* county attorney, *C. A. Burnett,* assistant county attorney, and *George. F. Beezley,* of Girard, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   This is an appeal from a judgment of conviction for violation of the prohibitory law and related statutes, particularly the "bone-dry" law.

The defendant was bound over by a justice of the peace to answer for five offenses against the laws relating to intoxicants.   In the district court, three counts against him were dismissed; and he was found guilty on the first count, and not guilty on the third count. His application for a new trial on the first count was granted.   Thereupon, the county attorney caused him to be haled again before a justice of the peace for other and similar offenses, and he was again bound over to appear in the district court; and a new information was filed against him in five counts, the first of these being the same as the one upon which he had been found guilty, and upon which he had been awarded a new trial.   Of the five counts in the second information, the third was dismissed; he was acquitted on the first, second and fifth, and convicted on the fourth.   This fourth count charged defendant with the offense of unlawfully and feloniously permitting another person to have and keep a quantity of intoxicating liquors upon the premises controlled by him.

It appears that the defendant conducted a boarding house. To justify the prosecution of defendant for a felony, the proper allegations were pleaded and proved to show that defendant had formerly been convicted of an offense under the prohibitory law; and the evidence in this case tended to show that, with the knowledge of defendant, some of his boarders had brought upon his premises and kept thereon three sacks of bottles of beer.

Defendant's assignment of error is chiefly directed to the overruling of his motion to quash the information.

It is first contended that the information did not state a public offense, but the court discerns no infirmity in it.   It

plainly charged a violation of section 1 of chapter 215 of the Session Laws of 1917, after setting out, in appropriate recitals, the defendant's previous criminal record to justify his classification as a persistent violator of the prohibitory acts.

The next contention is that the information failed to properly describe the premises where the offense was committed. The information described the premises thus: "Lot No. 46 in the original town of Ringo, Crawford county, Kansas." Such description was sufficient. (*The State v Rabinowitz,* 85 Kan. 841, 852, 853, 118 Pac. 1040.)

It is next urged that the alleged offense charged in the second information (fourth count), upon which defendant was convicted herein, was one 'upon which defendant had been acquitted in the former trial. We see no ground for this contention. The count in the first information upon which he was acquitted charged that on the 11th day of August, 1917, the defendant did unlawfully and feloniously keep and have in his possession intoxicating liquors. The present conviction is based upon a different offense, and charged (fourth count) that defendant did "unlawfully and feloniously permit another to have and keep intoxicating liquors on premises controlled by him," etc. The statute forbids such conduct The "bone-dry" act reads:

"It shall be unlawful for any person to keep or have in his possession, for personal use or otherwise, any intoxicating liquors, or permit another to have or keep or use intoxicating liquors on any premises owned or controlled by him, or to give away or furnish intoxicating liquors to another, except druggists or registered pharmacists as hereinafter provided." (Laws 1917, ch. 215, § 1.)

The court holds that the fourth count of this information stated a different offense from the one charged in the third count of the first information, and so far as concerns the fourth count, the motion to quash the information was properly overruled. The prosecution on the fourth count cannot be construed as placing him in jeopardy a second time for the offense of which he was acquitted, and since the defendant was acquitted on the first, second and fifth counts, and the third count of this information was dismissed, no further comparison between the counts charged in' the two informations would serve any purpose.

Another point, which contains no merit, is suggested in the contention that, after the justice of the peace had inquired into certain offenses with which the defendant was charged and had bound him over to the district court to answer therefor, the justice had no authority to inquire into the other offenses with which the defendant was charged later. Every time the county attorney learned of a new offense committed by the defendant, the latter might lawfully be arrested and taken before a justice and, upon proper inquiry, or upon waiver of examination, defendant might lawfully and repeatedly be bound over.

No prejudice to defendant occurred in filing in the district court the transcript of the proceedings ten days before those proceedings were duly certified. Criminals, in this enlightened age, need not expect to escape the consequences of their offenses on such trivialities. (Crim. Code, § 293, Gen. Stat. 1915, § 8215.)

It is also contended that the court erred in rendering judgment on the verdict, because the verdict was not filed. The basis for the assertion that it was not filed is a certificate of the clerk of the court incorporating true copies of the information, verdict of the jury, etc., as the same now appears of record in his office, and certain memoranda from his appearance record—"Verdict of the jury filed ————", no date being given. It seems clear that the verdict was filed; the court ordered it recorded; the judgment shows it; the clerk makes a certified copy of it; the appearance docket shows it to be filed; and the only thing lacking is the date of the filing. This seems to be another triviality.

We come, then, to the last and only serious question in this lawsuit—the constitutionality of the "bone-dry" law. Appellant says that it is unconstitutional and void, and cites many a respectable authority and precedent from Blackstone's time down to yesterday to that effect. But they all stop yesterday! The times change. Men change, and their opinions change; their notions of right and wrong change. The United States, its government and people, have come a long, long way since the Washingtonian society was organized in 1840 to combat intemperance. A whole generation of Americans has been born and educated, and has grown to maturity and taken its dominant place in the electorate and in official life,

since instruction in the evil effects of intoxicants upon the human system became compulsory in our public schools. (Laws 1885, ch. 169; Gen. Stat. 1915, § 9034.) That is the leaven which has leavened the whole lump. "Learn young, learn fair," is an old adage whose efficacy was never better proved than in the practical annihilation of the liquor traffic by the unnoticed, but persistent, work of the public schools for the last thirty years. While we of an earlier generation continued to argue the pros and cons of the liquor traffic, and the wisdom, or folly, or impossibility, of suppressing the sale and use of intoxicants, a generation arrived which will have none of it; that generation has said so as clearly and emphatically as the American people ever voiced their determiation on any subject since 1776. (XVIII amendment to U. S. Const.) And because of the ease with which the law prohibiting sales, etc., of liquor may be violated, and the difficulty of procuring evidence of such violation, the legislature in 1917 (Laws 1917, ch. 215) decreed that the mere possession of intoxicants, or knowingly to permit them to be kept on one's premises, should be unlawful. Any legislature sincerely determined to suppress the sale of liquor and to suppress the keeping of tippling nuisances, would be strongly persuaded to go the final step of forbidding the mere possession of intoxicants; otherwise its laws forbidding liquor sales and the existence of drinking dens would be bound to be somewhat ineffective. The whole matter is one of public policy. And the public policy of a state must largely be shaped by legislation. No federal or state constitutional inhibition was violated in the enactment of the "bone-dry" law, all of yesterday's juristic dissertations and precedents to the contrary notwithstanding. The supreme court of the United States has already said that this sort of legislation violates no fundamental privilege of a citizen of the United States which a state may not abridge. In *Crane v. Campbell*, 245 U. S. 304, the present question was raised concerning the Idaho "bone-dry" law. Mr. Justice McReynolds, speaking for the court, said:

"The question presented for our determination is whether the Idaho statute, in so far as it undertakes to render criminal the mere possession of whiskey for personal use, conflicts with that portion of the Fourteenth Amendment which declares: 'No state shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law.' Its validity under the state Constitution is not open for our consideration; with its wisdom this court is not directly concerned. It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment. . . . As the state has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. . . . And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose." (p. 307.)

(See, also, Note, L. R. A. 1918A, 942.)
The judgment is affirmed.