ELIZA CLARK, Appellant, v. HENRY RIDDLE, JEFF PHILLIPS, and THOMAS LANSING.

**Mulct Law:** SPECIAL CHARTER CITIES. Laws, 1894, chapter 62 (Mulct Law), authorizing all cities of over five thousand inhabitants, to grant or withhold their consent to the sale of liquors within their limits, which consent is made a bar to prosecution under the prohibitory law of the state, and to regulate the business of liquor selling, does not apply to cities acting under special charters, it being provided by McClain's Code, section 941, that no general law as to cities organized under the general incorporation act shall affect cities organized under special charters, unless it has special reference to such cities; hence the city council of a city under special charter, cannot, by its consent to the sale of liquor, suspend the penalties of the prohibitory law of the state.

GRANGER, J., dissenting.

INJUNCTION NOT A PERSONAL REMEDY. In an action to abate a liquor nuisance, an injunction cannot be granted against the proprietors

of a business because of their having made illegal sale of liquor elsewhere than in the building described; the illegal sale of liquor not being, itself, a ground for injunction.

INJUNCTION: *Cause.* In an action, under the statute, to abate a liquor nuisance, the court cannot tax the costs to a plaintiff, unless it is found that the action is brought maliciously, and without probable cause.

CONSENT BY RESOLUTION OF COUNCIL. Where a resolution was passed by a city council, and signed by the mayor, consenting to the sale of liquor by an applicant, under the mulct law, the fact that the clerk, by mistake, omitted the signature of the mayor from the copy filed with the county auditor, is not ground for the abatement of the licensed business, as a nuisance, where the mistake is corrected before the trial of an action for that purpose.

SAME. Such resolution need not be recorded in the ordinance book. It is sufficient to enter it upon the minutes of the council, duly attested by the proper officers.

DEFECTIVE BOND. The fact that a bond given by a firm of liquor dealers, is signed by one of the members as surety, renders it defective, but does not constitute a ground for enjoining their business as a nuisance, the bond being amendable under McClain's Code, section 326.

**Pleading:** FAILURE TO ATTACK. An answer in an action to abate a liquor nuisance, alleging that whatever business defendants did on the premises described in plaintiff's petition was carried on under and by virtue of the provisions and privileges granted by a specified chapter of the laws of a given year, and that from and after a specified date, defendants have complied with all the provisions and conditions of such chapter, is good, if vulernable at all, in the absence of motion or demurrer, where the chapter referred to provides for the sale of intoxicating liquors under specified conditions.

*Appeal from Linn District Court.*—HON. WILLIAM G. THOMPSON, Judge.

### WEDNESDAY, FEBRUARY 10, 1897.

SUIT in equity, to enjoin and abate a liquor nuisance. The defendants pleaded that the so-called "Mulct Law" was in force in their county, and that they had strictly followed the provisions of that law, and were not subject to the general prohibitory liquor

laws. The lower court dismissed the plaintiff's peti-
tion, and taxed the costs of the proceedings against
her, and she appeals.—*Reversed.*

*Rickel & Crocker* for appellant.

*William Smythe* and *Preston, Wheeler & Moffit*
for appellees.

DEEMER, J.—I. The district court found that the
prosecution was not actuated by malice, or without
probable cause, yet it taxed the costs of the proceed-
ings to the plaintiff. This was manifest error,
for the statute under which the proceeding was
instituted, provides that: "The costs in case of
failure of prosecution, or inability to collect the same
from the defendant; shall be paid in the same man-
ner as provided by law for the payment of fees in the
case of criminal prosecutions. But nothing herein
shall prevent the court trying such action from tax-
ing the costs to the party bringing the same in case
it appears the action was brought maliciously and
without probable cause."

II. The petition was in the ordinary form of
papers in like cases, and the original answer was a
general denial. After the evidence was adduced, the
defendants filed an amendment to their answer,
in which they stated: "That whatever business
they carried on in the premises described in
plaintiff's petition, was carried on by them under and
by virtue of the provisions and privileges granted
by chapter 62, of the Laws of the Twenty-fifth General
Assembly of Iowa, and aver that from and after May 25,
1894, they have complied with all the conditions and pro-
visions of said chapter 62, upon their part to be done and
performed; wherefore they say that such business was

lawful." Appellants counsel contend that this amendment is a mere conclusion of the pleader, and states no issuable or traversable facts. No objection was taken to the pleading in the lower court, and we think that, in the absence of a motion or demurrer, it was good, and tendered an issue of fact which the defendants had the right to have considered. It may be that the pleading was not vulnerable to an attack of any kind, for it is provided by statute (McClain's Code, section 3914), that "in pleading a statute, or a right derived therefrom, it shall be sufficient to refer to such statute by its title and the day of its passage, and the court shall thereupon take judicial notice thereof." And section 2715 of the Code, also provides that "in pleading the performance of conditions precedent in a contract is is not necessary to state the facts constituting such performance, but the party may state generally that he duly performed all the conditions on his part." Although it is not necessary to decide the question, it occurs to us that these statutes have some relevancy to the pleadings, and that, construed with reference thereto, they are sufficient.

III. It is claimed that no copy of the resolutions of the city council of the city of Cedar Rapids, consenting to sales by the appellees, was filed with the county auditor, and it is further insisted that when this action was commenced, no such resolution had been signed by the mayor, as required by section 1, chapter 192, Acts Twentieth General Assembly, and section 1, chapter 2, Acts Twenty-second General Assembly. The certificate of the city clerk to the copy of the resolutions offered in evidence, shows that the original was duly passed, and signed by the mayor and clerk, on the twenty-fourth day of May, 1894, before this action was commenced. The only evidence we have to the contrary, is the testimony of a witness that he examined the ordinance book of the

city some time in the latter part of July, or first of August, and found that this resolution there recorded, was not signed by the mayor. He did not find the original resolution, and did not pretend to say that it was not signed by the mayor at the time it was adopted. A resolution such as the one in question, does not have to be recorded in the ordinance book. All that is required is that it be entered upon the minutes of the council, and duly attested by the proper officers. The original copy of the resolutions filed with the county auditor, did not contain the signature of the mayor, but this was corrected within a few days after the petition was filed, and nearly three months before the cause came on for trial. Surely, a court of equity will not permanently enjoin the defendants, and hold their property to be a nuisance, and subject to abatement, because the city clerk neglected to attach the signature of the mayor to the copy of the resolution filed with the county auditor, especially where, as in this case, the error is corrected long before the case is called for trial.

IV. The bond given to meet the requirements of the law, was signed by Phillips and Lansing, as principals, and Henry Hanright and Thomas H. Lansing as sureties. Thomas H. Lansing was one of the firm of Phillips & Lansing, and it is said that the bond was insufficient. The statute with reference to the bond, required it to be signed by the principal and by the sureties, who shall qualify each in double the amount of the bond. As Lansing was already bound to the full penalty of the bond, as principal, it is no doubt true that signing his name as surety added nothing to the strength of the instrument, and that the bond is technically insufficient. But, at most, the bond was simply defective. McClain's Code, section 326, provides that "no defective bond or other

security,   *   *   *   shall prejudice the party giving or
making it, provided it be so rectified within a reason-
able time after the defect is discovered, as not to cause
essential injury to the other party."

V.   It is also contended that defendants did not
file a complete list of their employes. This contention
is based upon a misapprehension of the record.   The
employe whose name is said to have been omitted did
not work around the premises in question.

VI.   It is argued by counsel for appellant that an
injunction should issue against the defendants person-
ally, because the evidence shows that they are con-
ducting another place than the one in question, in
violation of law.   It is said that this other place had
more than one room in which liquors were sold.   The
difficulty with the argument is that it is the building
which constitutes the nuisance which is sought to be
abated, and the maintenance thereof enjoined.   And
the evidence should be confined to the partic-
ular building referred to in the petition.   Proof
that defendants were conducting another nui-
sance would not justify the abatement of the one
complained of.   The injunction does not run against
the person for the mere selling of liquor in violation
of law.   It operates to abate and enjoin a nuisance
conducted by him in the building referred to in the
petition, and by operation of law is extended to him
in person, so that he may not sell at any place within
the judicial district.   But no court has jurisdiction
to simply enjoin one from selling liquor, independent
of the place where the nuisance exists.

VII.   The real question in the case is, whether
the bar created by section 17, of the "Mulct Law"
(Acts Twenty-fifth General Assembly, chapter
62) is applicable to cities acting under special
charters.   The city of Cedar Rapids is so acting,
and it is claimed by counsel for appellant, that the

provisions of the act to which we have referred, have no application to such a place. And they cite, in support of their contention, section 21, chapter 116, of the Laws of the Sixteenth General Assembly (section 941, of McClain's Code), which is as follows: "No general law as to powers of cities organized under the general incorporation act, shall in any manner be construed to affect the charter or laws of cities organized under special charters, and while they continue to act under such charters, unless the same shall have special reference to such cities." It is said, that the act in question is a general law, relating to the powers of cities organized under the general incorporation act, and that it does not make special reference to cities organized under special charters. That the law is a general one, must be conceded, and it is also certain that it does not specially mention cities acting under special charters. The only question which remains is, do the provisions of this act of the Twenty-fifth General Assembly, creating the bar, relate to the powers of cities organized under the general incorporation act? If they do, then it is clear, that they cannot be made to apply to cities acting under special charters. It is true, that the primary object of the act is to levy a tax on the business of liquor-selling anywhere within the state. See sections 1–14 of the act. The secondary object of the act, however, is to relieve the person engaged in the business from the penalties which ordinarily follow the sale or keeping for sale of intoxicating liquor. This can only be accomplished by securing from the city council of a city of over five thousand inhabitants, a resolution consenting to the sales. This consent the city may grant or withhold, at its pleasure; and, if granted, it may revoke it at any time, and thus subject the person engaged in the business to the penalties of the prohibitory law. See sections 17 and 19 of the act. The city also has power to levy and

collect additional taxes, and to adopt, from time to
time, rules and ordinances for further regulating and
controlling the traffic, not in conflict with the other
provisions of the act. See section 24. Do these pro-
visions affect the powers of municipal corporations?
Do they add to or subtract from the powers of cities
organized under the general incorporation act? It
seems to us that they most clearly do. The city,
through its council, has the right to consent to sales
of liquor, and without such consent the act is unlaw-
ful. It may withhold its consent or not, as to it may
seem best. After giving its consent, it may revoke it
at pleasure. It receives one-half of the tax, and may
increase the amount levied by the general law at its
pleasure. It may also adopt such rules and ordinances
with reference to the conduct of the business as to it
may seem best for the purpose of protecting property
and preserving the peace and good order of the inhab-
itants. These provisions, if applied to Cedar Rapids,
would affect the charter and laws of that city. They
would give it additional power, and confer upon it the
right to collect additional taxes, which it did not oth-
erwise possess. The constitutionality of the act was
sustained, on the theory that it was a delegation of
power to a city, authorizing it to regulate the traffic
in intoxicating liquors in the exercise of its police
power. On no other theory, in our opinion, could the
constitutionality of the act be sustained. *State v.
Forkner*, 94 Iowa, 733 (62 N. W. Rep. 772). Counsel
for appellees say, in argument, that the provisions of
section 24, of the act, may be disregarded, and the other
parts of the act sustained. Under some circumstances
this might be true. But this section is important to a
determination of the question as to the scope and
intent of the act as a whole, and cannot well be disre-
garded in settling the question as to the legislative
intent. Section 941, of McClain's Code, gives us a rule

for the construction of subsequent acts of the legislature, and we must assume that the Twenty-fifth General Assembly had this section in mind when it passed the law in question. But for this enactment, we could well say that it was the purpose of the legislature to refer the whole matter of the control of the liquor traffic to the various municipalities of the state in recognition of their right of local self-government; and the public history of the state with reference to this matter would bear us out in giving it this interpretation. The act of the Sixteenth General Assembly clearly precludes such a thought, however, for it expressly says that "no general law * * * shall in any manner be construed to affect the charter or laws of cities acting under special charters, * * * unless the same shall have special reference to such cities." There is nothing in the act under consideration, to indicate that the legislature had in mind the repeal of this statute. Indeed, the contrary appears, for in various acts passed by this legislature, that body recognized the binding force of section 941, and whenever it desired to have an act apply to cities acting under special charters, it specially mentioned them. Whenever it did not design to have the acts passed by it apply to special charter cities, they are not mentioned. See chapters 1, 3-9, of the Acts of the Twenty-fifth General Assembly.

It is thought that the law, if construed as contended for by appellees, does not affect the charter or laws of the city of Cedar Rapids. The charter of a corporation is the instrument creating the corporate body, giving it its name, defining its objects, and conferring its powers. Its laws are the by-laws, rules, regulations, and ordinances passed by the governing body, under and by virtue of its charter, or necessarily incident to the exercise of its charter powers. The charter of the city of Cedar

Rapids, defining its powers, did not authorize its council to consent to sales of liquor within its borders, nor to withdraw its consent to such sales. Its laws, which we must assume to be in harmony with its charter, did not authorize any such thing. The city council had no right, under the charter or laws of the city, to suspend the penalties of the prohibitory liquor law. Now, does the act under consideration, authorizing the city council to consent by resolution to the sale of liquor, affect the powers of the city of Cedar Rapids? The word "affect" means "to act upon; to change;" and the test we have heretofore applied, is to determine whether the act adds to or substracts from .the powers vested in the municipal corporation, acting under a special charter. No one would contend, we think, that the law, if applied to the city of Cedar Rapids, would not add to the powers vested in it by its charter. If construed to apply to them, it would certainly change, and thus affect, the charter and laws of cities acting under special charters. This exact question was decided adversely to appellees, as we understand it, in the case of *State v. Finger*, 46 Iowa, 25. If it be said that the law under consideraation does not affect the charter and laws of the city of Cedar Rapids, it is difficult to see when and how it acquired the power and authority to pass a resolution consenting to the sales of liquor within its borders. And, if it had no power to do so, then the sales made by defendants were unlawful. Our conclusion is, that the provisions of the act of the Twenty-fifth General Assembly, creating the bar, relate to the powers of cities organized under the general incorporation laws, and that they do not relate, to or affect, cities organized under special charters, for the reason that they are not specially mentioned. In other words, the case comes squarely within the provisions

of McClain's Code, section 941. Appellees' counsel
cite *Grant v. City of Davenport*, 36 Iowa, 404. This
case is not in point, for the reason that it was decided
prior to the act of the Sixteenth General Assembly,
before quoted. If it has any bearing, it is in support
of our conclusions. The cases of *State v. Finger*,
*supra*, and *Bartemeyer v. Rohlfs*, 71 Iowa, 582 (32 N.
W. Rep. 673), are in line with our views. We have no
occasion to consider the validity of the tax imposed
by sections 1-14 of the act, as such a question is not
before us. For the reasons assigned, the decree of the
district court is erroneous, and should be reversed. A
decree will be entered in this court against all the
defendants, as prayed, and judgment entered against
them for costs, which will include the sum of one
hundred dollars as attorney's fees for plaintiff's attor-
neys.—REVERSED.

GRANGER, J. (dissenting).—I do not concur in the
reasoning or the conclusion of that part of the
majority opinion, holding that, because of section 941,
of McClain's Code, the act known as the "Mulct Law"
does not apply to the city of Cedar Rapids. Inde-
pendent of the prescribed method of expressing the
legislative intent, no one, I think, doubts that the
mulct law was designed to apply to all cities of the
state, and such has been its popular construction and
application. It is a question, then, if the legislature
has failed to indicate in a legal manner, its intention
as to the act. I do not dispute the facts stated in the
majority opinion, that go to make section 941 apply
to the mulct law, barring the single conclusion stated
therein, that the law affects the charter and laws of
the city of Cedar Rapids. I frankly concede that, if
it does affect such charter or laws of the city, the
conclusion of the majority is correct. I make the
further admission, for the purpose of the case, at

least, that all acts of the legislature specifically made applicable to cities under special charters, become parts of the charter or laws of the city, as the intent may appear. I do not concede, nor do I think it is claimed, that general legislation that applies to Cedar Rapids in common with the rest of the state, or the cities generally of the state, is a part of the laws of the city of Cedar Rapids, within the meaning of such section 941. I think it is conceded, and if not, I make the contention, that the laws of Cedar Rapids, within the meaning of section 941, are no more than its ordinances, and such acts as are made specially applicable thereto. The theory of the majority opinion is made to turn on the conclusions, therein stated, that some of the provisions of the mulct law give added powers to the city, and because thereof, its charter and laws are affected, within the meaning of the section we are considering. I do not know how the charter can be affected, unless it is by an amendment that changes it by taking from, or adding to it. The mulct law makes no reference to the cities under special charters, or to Cedar Rapids, and the act of the Sixteenth General Assembly, amending the special charters of cities acting thereunder, makes section 941, a part of the charter of Cedar Rapids, and it cannot be amended except by an act specially referring thereto; so that we must assume an absence of legislative intent to affect the charter in the passing of the act. The authority of the legislature to, independent of the charter, grant the particular powers referred to in the majority opinion, is not a matter for present consideration, the question being, does the act affect the charter or laws? If I understand the majority, its claim is that any delegation of power to act, given to such cities, amounts to an amendment of their charters. I think that depends on the legislative intent. I am not prepared to say

that the legislature may not, in aid of its general legislation, devolve upon the officers of all cities, duties not intended as within the purview of their charters, but as a means of effecting the public good generally, by means of such legislation. I incline to the view that the right is not doubted. The thought is pertinent, in connection with section 941, because the section, in prescribing a rule of construction, does not prevent such laws from having application to such cities, but provides only that they shall not be so construed as to affect the charters or laws thereof; and we are not in dispute but that the "laws" mean the laws applicable alone to them. Other laws apply to the state at large, including such cities.

It is said in the majority opinion that we must assume that the legislature had in mind section 941, when it passed the mulct law. With that statement I agree. It then leaves to inference the conclusion that, because of such knowledge, and its failure to make the reference necessary to permit the law to affect the charters and laws of such cities, it did not intend the law to apply to such cities. With that conclusion I do not agree. No fact of state history of public importance is better understood than that the law was intended to apply to all cities. The only rational conclusion is that the intent was that the law should apply to all cities, and that as to those under special charters it should not be construed so as to affect their charters or laws. It seems to me that the majority, to evade this conclusion, has enlarged upon the language of section 941, so as to make it read that "no general law as to powers of cities incorporated under the general incorporation act, shall be construed to apply to cities under special charters," etc., instead of *"to affect the charters or laws"* of such cities. The difference in meaning is manifest. A reference to the opinion will show that the language of

the section, so changed, is made the basis of its conclusion.

It is further said in the opinion, speaking of the powers of the city of Cedar Rapids by virtue of its charter and the law in question: "If construed to apply to them [that is, the powers under their charters], it would certainly change and thus affect the charter and laws" of the city. I grant it, but that is begging the question. The correct test is, how will it be if you *don't* so construe it? It logically and rightly follows that it won't affect them. Section 941 says the law must not be construed to affect them. It seems to me the case should not be permitted to turn on a forbidden state of facts. I will add here that a chief ground of my contention is that the subject of the mulct law, it being as to the sale of intoxicating liquors, is one clearly outside the powers possessed by such cities under their charters, because of a general law of the state, and the grant, under the mulct law, in no way affects a single provision in the charter of Cedar Rapids. With the act in full force, the city could do, as to its charter rights, precisely as it did before. I may repeat that the act is as to a subject entirely independent of charter rights and provisions, and the grant of particular powers therein is distinct from such rights and provisions; and, because of the rule of construction prescribed by the legislature in section 941, the act cannot be construed as an attempt to change the charter. I think, then, we have the fact, that there is an absence of a legislative intent to change the charter rights of Cedar Rapids by the mulct law, and the further fact that it actually does not conflict with the act in force in the city, according to its terms. What is said as to the charter, is also true as to the laws of the city, so far as the record shows. I may add, that I have, with considerable care, examined the acts constituting

the charter in question, and that what I have said as to the effect of the mulct therein, is in my judgment, not to be doubted. The majority opinion refers to *State v. Finger* and *Bartemeyer v. Rohlfs*. In each case it is said, that the act construed affects the charter and laws of the city, which I assume to be true; and, thus understood, the conclusions accord with the judgment of all. I esteem the conclusion of the majority as unfortunate for the public and many individuals. In such cities consents have been given for the sale of liquors; taxes have been imposed and paid, undoubtedly, to a large amount; all of which acts will now be likely to be claimed as unlawful, resulting in claims and counter-claims, which must be determined by litigation before the rights of the parties can be known. We may expect that criminal prosecutions will follow, because of sales of liquor, on the theory that the permits granted and the taxes paid, were without the sanction of the law, and hence no protection against the imposition of penalties under the general law prohibiting such sales. These consequences should not induce a misconstruction of the law, but they are a forcible protest against even a doubtful construction that plainly defeats the legislative will. My conclusion accords with that of the district court, and I think, its judgment should be AFFIRMED.