MOORE v. JARVIS
(No. 1758; March 1, 1932; 8 Pac. (2d) 818)

For the plaintiff there was a brief and oral argument by *Wm. B. Cobb,* of Casper, Wyoming.

For the defendant there was a brief by *J. A. Greenwood,* Attorney General, *Richard J. Jackson,* Deputy Attorney General, and *George W. Ferguson,* Assistant Attorney General, and also oral argument by *Mr. Jackson.*

*Wm. B. Cobb,* in reply.

RINER, Justice.

This matter is here upon the petition of Clifford C. Moore—who will be referred to herein either as the "petitioner," the "defendant" or by his name—for a writ of habeas corpus directed to Dick Jarvis as Sheriff of Camp-

bell County, Wyoming, who, it is claimed in said petition, is unlawfully restraining the petitioner of his liberty. To this petition, the Attorney General of the State of Wyoming has made answer on behalf of the respondent and petitioner has questioned the sufficiency thereof as upon demurrer. The personal production and presence of the petitioner at the hearing had upon the issues thus joined was waived by his counsel and petitioner's ultimate right to the writ is the question now to be determined.

The situation disclosed by the pleadings is substantially as follows: Some time prior to the third day of February, 1931, the County Attorney of Campbell County, Wyoming, filed in the District Court of said county a petition entitled "State of Wyoming on the relation of Earl Dunlap, County and Prosecuting Attorney of Campbell County, Wyoming, Plaintiff v. Clifford C. Moore, alias C. C. Moore, alias Cliff Moore, alias 'Dr. Pete' Moore, Defendant," wherein the abatement of an alleged nuisance on certain described property and an injunction order was sought against said defendant. On the date above mentioned, the cause came on for final hearing, all parties being then duly represented by counsel. After the introduction of evidence and the conclusion of the hearing, the court found "that the material allegations in said petition are true and that the defendant has been guilty of maintaining a nuisance in operation of gambling games and the sale of intoxicating liquor in the premises known as the Perkins Building, or Moore and Moore Pastime and located on Lot Fourteen of Block Seven of the First Addition to the town of Gillette, Campbell County, Wyoming, and that the nuisance should be abated and the defendant, Clifford C. Moore, should be permanently enjoined from continuing to violate the intoxicating liquor laws and the gambling laws of the State of Wyoming." Pursuant to this finding, a decree granting the relief asked by plaintiff's petition under date of February 3, 1931, was entered to the effect that "the said defendant be and he is hereby, together with his agents, servants and employes,

permanently restrained and enjoined from operating or conducting gambling games and from trafficking in intoxicating liquor in violation of the laws of the State of Wyoming in or upon said premises or elsewhere within the Seventh Judicial District of the State of Wyoming" and that the Sheriff close "said building or place" against its use for such purposes for one year unless sooner released by order of court. No proceedings to review this decree were ever prosecuted.

Subsequently and on the seventh day of September, 1931, the County Attorney of Campbell County, filed in the District Court aforesaid, a sworn information consisting of nine paragraphs denominated "counts" wherein and whereby the court was apprised in substance that Clifford C. Moore, the above named defendant "in the said Campbell County in the State of Wyoming, at and within a certain building located on Lot 1, Block 2, Park Addition to the town of Gillette, Campbell County, Wyoming, by himself, his agents or other persons in privity with the said Clifford C. Moore," knowingly and unlawfully and contrary to the injunction order above described and while it was in force and effect, did certain acts which are particularly enumerated. These acts which were charged to have been committed, commencing on August 1, 1931, and concluding on September 5, 1931, occurring also on sundry other specified days intervening the dates mentioned, consisted of the repeated sale to divers persons named, of intoxicating liquors and the possession for sale of considerable quantities thereof.

This information was duly served on Moore on September 7, 1931, and on September 9 following, he entered a plea of not guilty thereto. Thereafter, another judge than the one who had entered the injunction decree was assigned to try the issues thus made, a hearing was had and the defendant was "found guilty of the offense charged in the information, to-wit: That of contempt of court." It was thereupon adjudged that defendant pay a fine of $600.00

and costs and that he be committed to jail until fine and costs were paid or he was otherwise legally discharged. No proceedings to obtain a review of this judgment by the usual methods of error proceedings or direct appeal were ever prosecuted. The relief here sought is from the restraint imposed upon the defendant in consequence of his failure to pay the fine thus adjudged.

This court in Miskimmins v. Shaver, 8 Wyo. 392, 58 Pac. 411, 415, 49 L. R. A. 831, a case involving the legality of contempt proceedings, has said concerning the writ of habeas corpus that:

"The writ is not in the nature of, nor is it to be used as a substitute for, proceedings in error. A finding or decision of the inferior court, no matter how erroneous, if it does not affect its jurisdiction, is not subject to attack in this collateral proceeding. The office of the writ is to determine the legality of the particular imprisonment, and the facts to be considered in determining that question are jurisdictional facts. If upon a consideration of such facts, it appears that the court exceeded its jurisdiction in making the order, the petitioner will be discharged upon habeas corpus, and it is not material that the questions might have been brought to this court by petition in error."

Several years antedating the decision thus mentioned, in the case of In re Wright, 3 Wyo. 478, 27 Pac. 565, 568, 13 L. R. A. 748, 31 Am. St. Rep. 94, the court had also declared that, while it did "not favor the practice of looking into the constitutionality of this statute in habeas corpus proceedings," mentioning the rule announced in some jurisdictions to the effect that such a question must be tested by appeal, writ of error or trial in the appropriate court, remarked further:

"But the Supreme Court of the United States in Ex parte Siebold, 100 U. S. 371, (25 L. Ed. 717), has established a different doctrine; and this seems now to be the rule in habeas corpus, as the learned author of the work above cited states: 'But we apprehend the true rule to be that

98

when a prisoner alleges that the law under which he was convicted and sentenced is unconstitutional, or has been repealed before the trial and judgment, he may have these matters passed upon by the highest judicial tribunals, whether the attack upon the judgment be collateral, as by habeas corpus, or direct, as by appeal or writ of error.' Church Hab. Corp. Sec. 570.''

It would seem clear that the quoted excerpt from the author mentioned, embodies the prevailing doctrine in this country at this time, 29 C. J. 35 and cases cited in Note 48.

It is here contended for petitioner that the District Court was without authority in law to enter the injunction decree aforesaid in that § 22, ch. 117, Session Laws of Wyoming, 1921, ''does not authorize the District Court to permanently restrain a person from committing certain crimes therein specified and thereafter to prosecute and punish the individual for his contempt by his violation of such order so entered and that said section as applied to the facts in this case is unconstitutional and void as contravening the provisions of §§ 6, 7, 9, 10 and 15 of Article I of the Wyoming Constitution.''

We are inclined to the view that counsel has overlooked the true nature of the proceedings leading to the prisoner's restraint and that § 22, ch. 117, Laws of Wyoming, 1921, is not in this matter involved. It appears to us that the District Court of Campbell County took the course it did because its jurisdiction and action was invoked under §§ 20, 21 and 24 of ch. 117, supra. As pointed out in Tucker v. State, 35 Wyo. 430, 251 Pac. 460, 465, the chapter last mentioned ''is substantially an act to carry into force and effect in the State of Wyoming, the National Volstead Act.'' (27 U. S. C. A., Sec. 1, et seq.) Sections 20, 21 and 24 aforesaid are, aside from some slight changes not material here, practically identical with Sections 21, 22 and 24 of title 2 of the national law (27 U. S. C. A., Secs. 33, 34, 38) relating to intoxicating liquors and prohibiting their sale and manufacture. Section 22 of Chapter 117 which petitioner

argues is involved here, corresponds with Section 23 of title 2 of the Volstead Act. (27 U. S. C. A., Sec. 35).

The constitutionality and validity of §§ 20, 21 and 24 of ch. 117 are now hardly open to question. United States v. American Brewing Company, (D. C.) 1 Fed. (2nd) 1001; Murphy v. United States, 272 U. S. 630, 47 S. Ct. 218, 71 L. Ed. 446; Grosfield v. United States, 276 U. S. 494, 48 S. Ct. 329, 330, 72 L. Ed. 670, 59 A. L. R. 620; see also Tucker v. State, supra. Petitioner, himself, does not so question them.

From the recital of the facts disclosed by the pleadings in this matter as hereinbefore set out, it appears that petitioner was originally charged with and was found guilty of maintaining a nuisance as defined by Section 20 of ch. 117, supra, said nuisance being conducted in the Perkins Building on Lot Fourteen of Block Seven of the First Addition to the town of Gillette. The procedure invoked was apparently that authorized by Section 21 of said Chapter for these premises were ordered closed against such use for the period of one year unless sooner released by court order and the defendant was permanently enjoined, as previously recited, from "trafficking in intoxicating liquor in violation of the laws of the State of Wyoming, in or upon said premises or elsewhere within the Seventh Judicial District of the State of Wyoming."

The proceedings to establish the violation,—instituted as provided by Section 24 of Chapter 117 aforesaid—were by sworn information which specifically referred to and charged a disregard by the defendant of the decree of February 3, 1931. Its allegations, if true, show that defendant had for more than a month previous been committing certain acts consisting of the continued sale and possession of intoxicating liquor for sale "at and within a certain building located on Lot 1, Block 2, Park Addition to the town of Gillette" above mentioned which, under the provisions of Section 20 aforesaid, constituted these last mentioned

premises a nuisance also and made them subject to abatement under said Section 22.

On this collateral attack, the averments contained in the information must necessarily be regarded as true for the court found the defendant guilty of the offense charged therein, i. e., contempt. It is to be noted too, that the defendant was by the decree restrained from "trafficking in intoxicating liquor" on the described premises or elsewhere in the Seventh Judicial District. According to the Century Dictionary, the verb "traffic" means "to carry on commerce," "to have business or dealings" or "to deal." So the restraint of the decree was directed against the defendant's continued conduct of the business denominated by the statute a common nuisance, on the described premises or on other places in the district above named.

The question presented by the record before us therefore, shortly stated, is this: When a defendant has lawfully been enjoined from maintaining a public nuisance on certain designated premises in a town or city, may the court in the exercise of its equitable powers, also restrain the defendant from continuing the same nuisance at other places within the trial court's district so as to prevent the defendant from moving to other premises in that community and again conducting the same nuisance entirely immune to any charge of violating such restrictive order? It seems to be the contention of counsel for petitioner that the court has no power to mould its prohibitory process to stop such a course of procedure, but can follow the perpetrator of the nuisance as he moves from new location to new location in its district only as additional equity proceedings are initiated against him. We have examined with care the authorities submitted on behalf of petitioner, but upon analysis of them, do not find them supporting any such doctrine. On the contrary, some of the statements in the decisions to which we have been referred would seem to seriously question the soundness of petitioner's contentions herein as will presently be seen.

Throughout the consideration of the matter before us, it should be constantly borne in mind as said by Mr. Justice Sutherland in Grosfield v. United States, supra, concerning Section 22 of the National Prohibition Act, 27 U. S. C. A., Sec. 34 (substantially Section 21 of Chapter 117, Laws of Wyoming, 1921) that:

"The purpose of the provision of the statute authorizing an injunction against occupancy and use is not punitive but preventive, Murphy v. United States, 272 U. S. 630, 632, 47 S. Ct. 218, 71 L. Ed. 446."

It will materially aid, we think, in the solution of the question in hand to consider the disposition by the courts of cases presenting analogous problems both before and since the enactment of the state and national legislation herein above mentioned.

In Eilenbecker v. Plymouth County, 134 U. S. 31, 33 L. Ed. 801, 10 S. Ct. 424, it appeared that the state law of Iowa provided:

"The building or erection of whatever kind, or the ground itself in or upon which such unlawful manufacture or sale, or keeping, with intent to sell, use or give away, of any intoxicating liquors, is carried on or continued or exists, and the furniture, fixture, vessels, and contents, is hereby declared a nuisance, and shall be abated as hereinafter provided, * * *. Any citizen of the county where such nuisance exists, or is kept or maintained, may maintain an action in equity, to abate and perpetually enjoin the same."

Under this statute, the District Court of Plymouth County in that state rendered a judgment which imposed a fine and imprisonment upon the plaintiff in error as a punishment for contempt in disobeying an injunction restraining him "from selling or keeping for sale any intoxicating liquors including ale, wine and beer, in Plymouth County." This judgment was thereafter affirmed by the Supreme Court of Iowa. On error, in the national court of last re-

sort, the same result was reached against divers alleged constitutional objections made to the state statute and judgment under it, particularly as violating the provisions of Section 1 of Article 14 of the Amendments to the Constitution of the United States, in that they deprived persons charged with selling intoxicating liquors of the equal protection of the law, abridged their rights and privileges and denied to them the right of trial by jury while in all other criminal prosecutions, the accused was required to be presented by indictment and then have the benefit of a trial by a jury of his peers. Concluding the opinion in the case, Mr. Justice Miller said:

"If the objection to the statute is that it authorizes a proceeding in the nature of a suit in equity to suppress the manufacture and sale of intoxicating liquors which are by law prohibited, and to abate the nuisance which the statute declares such acts to be, wherever carried on, we respond that, so far as at present advised, it appears to us that all the powers of a court, whether at common law or in chancery, may be called into operation by a legislative body for the purpose of suppressing this objectionable traffic; and we know of no hindrance in the Constitution of the United States to the form of proceedings, or to the court in which this remedy shall be had. Certainly it seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil, as to punish the offence as a crime after it has been committed.

"We think it was within the power of the court of Plymouth County to issue the writs of injunction in these cases, and that the disobedience to them by the plaintiffs in error subjected them to the proceedings for contempt which were had before that court."

The case of State v. City Club, 83 S. C. 509, 65 S. E. 730, 732, cited by petitioner, was a proceeding to obtain an injunction against respondents to restrain the maintenance of a liquor nuisance in the City of Columbia in 1908 and to enjoin the City Club and its manager from selling or dispensing alcoholic liquors and beverages. The trial court declined to grant a permanent injunction. The

statute (§ 29 of Act of February 16, 1907), among other things, provided: "All places where persons are permitted to resort for the purpose of drinking alcoholic liquors, or beverages, are hereby declared nuisances, and the keeper or manager of such places, upon conviction, shall be punished" as for a misdemeanor. No statutory authority for the issuance of an injunction in such case appears to be discussed, yet in reversing the judgment of the lower court, it was remarked:

"It is manifest from this legislation that respondents, City Club and DeLay, upon the testimony, maintained a nuisance, as alleged in the petition. The equitable jurisdiction of the court to enjoin a public nuisance is not affected by the fact that a criminal prosecution may also be instituted for the acts which constitute the nuisance.

"Respondent's counsel, while conceding that one may be enjoined from maintaining a nuisance at a particular place, contends that he may not be enjoined from selling liquor independently of the place where the nuisance exists. There is authority for such position, and we are disposed to take this view as a general rule. 17 Enc. Law 322; Clarke v. Riddle, 101 Iowa 270; State v. Frahm, 109 Iowa 101, 80 N. W. 209, cited in the note.

"Hence it was not error to decline to issue a blanket injunction against respondents to restrain the selling of alcoholic liquors within the state.

"Possibly circumstances may be such as would justify the court in enlarging the sphere of its injunction, as where the court has reason to believe the offender, after injunction, will shift his nuisance to another place, so as to render the injunction practically useless. The court might prefer not to chase the offender from place to place, but might head him off by a broader restraining order.

"Appellant further contends that the court erred in holding that the place of the alleged nuisance was abandoned at the hearing, and there was nothing to enjoin. * * * The abandonment of a nuisance in good faith before the final hearing should have weight with the court in the exercise of its discretion; but the mere moving to other quarters, after a preliminary restraining order and on the eye of a final hearing, with nothing to show a com-

plete and bona fide abandonment of the design to violate the law, is not sufficient to stay injunction. 17 Ency. Law, and cases cited in note 4.''

State v. Frahm, 109 Ia. 101, 80 N. W. 209, cited in the foregoing excerpt, was one where an injunction was sought against an alleged nuisance claimed to have been caused by the defendant's keeping for sale and selling of intoxicating liquors on certain described premises in violation of law. The proof showed that when the action was commenced, Frahm was not keeping or selling intoxicating liquor on those premises. The judgment of the lower court allowing an injunction was accordingly reversed.

The other case referred to in the same connection, Clark v. Riddle, 101 Ia. 270, 70 N. W. 207, 209, was also a suit in equity to enjoin and abate a liquor nuisance. The lower court dismissed plaintiff's petition. The judgment was reversed by the appellate court and in the course of Judge Deemer's opinion, appears the following language:

''The evidence should be confined to the particular building referred to in the petition. Proof that defendants were conducting another nuisance would not justify the abatement of the one complained of. The injunction does not run against the person for the mere selling of liquor in violation of law. It operates to abate and enjoin a nuisance conducted by him in the building referred to in the petition, and by operation of law is extended to him in person, so that he may not sell at any place within the judicial district.''

An earlier Iowa case, McGlasson v. Johnson, 86 Ia. 477, 53 N. W. 267, interpreting the state law which provided that the injunction should bind the party restrained throughout the district in a liquor nuisance case, held that it had that effect even though the injunction did not so state.

In State v. Dykes, 83 Kan. 250, 111 Pac. 179, under a statute authorizing an injunction against the maintenance of a place where intoxicating liquors were sold illegally, it was held that a judgment enjoining a defendant from maintaining such a place anywhere in the county was not void. The defendant who had been adjudged in contempt of court for violation of the decree, contended on appeal from that judgment that in the injunction action, the court had no jurisdiction to make any order except with respect to the particular premises described in the petition and that, therefore, the part of the decree mentioned above was a nullity and could be disobeyed with impunity. Holding otherwise, the court said:

"Of course the fact that a court's order is erroneous does not justify its violation, if jurisdiction to make it existed. (In re Lewis, 67 Kan. 340, 72 Pac. 788, 22 Cyc. 1019.) Even where the injunction granted is broader than the pleadings it must be respected while it stands. (22 Cyc. 1010; O'Brien v. The People, 216 Ill. 354, 75 N. E. 108, 108 Am. St. Rep. 219 [3 Am. Cas. 966]; Vilter Mfg. Co. v. Humphrey, 132 Wis. 587, 122 N. W. 1095, 13 L. R. A. (N. S.) 591.) If Dykes had been enjoined from conducting a 'joint' anywhere in a specified building the claim would hardly be made that any part of the order was void merely because the petition narrowed the description to a single room. So if the charge against him referred to a particular lot, and the judgment covered the entire block, there would obviously be no defect of jurisdiction. The present situation is not essentially different from either of those suggested. The forbidden territory was broadened so as to include the whole county. However erroneous the judgment may have been, the defendant's remedy was to correct it by direct action. So long as it stood unreversed and unmodified it was entitled to his obedience."

The relief asked in that case appears to have been confined to the particular premises and no question concerning the threatened continuance of a nuisance elsewhere

within the court's jurisdiction seems to have been involved. It will be observed too, that no doubt of the court's power to issue such an injunction is suggested.

Where an original application for a writ of habeas corpus was made to the Court of Criminal Appeals of Texas in Ex Parte Alderete, 83 Tex. Cr. R. 358, 203 S. W. 763, the relief sought was against restraint in consequence of a judgment of the District Court in El Paso County, declaring relator in contempt of court. The facts were that the relator was an officer of a corporation domiciled in El Paso County, Texas; that it at first operated at the town of Ysleta in that county; that in a suit filed against it and relator while it was so operating, a judgment was entered decreeing that:

"the writ of injunction as prayed for in plaintiff's original petition filed herein the 20th day of July, A. D. 1916, be granted, and that the defendant, La Union Fraternal, a corporation, and its officers, agents, servants, and employes, and Ike Alderete, be and are hereby perpetually enjoined and restrained from using the premises of said club, or any part thereof, for the purpose of selling spirituous, vinous, and malt liquors, or either of them, and from keeping for sale therein spirituous, vinous, or malt liquors, and from using the stock, means, assets, and property of the said La Union Fraternal, a corporation, for purchasing, selling, and dispensing intoxicating liquors to its members and other persons";

that an appeal prosecuted from said judgment failed; that thereafter the corporation and relator began operating again in the City of El Paso in the county aforesaid; that thereupon, relator was cited and appeared in a contempt proceeding in the court which rendered the judgment above described with the result that relator was found guilty of contempt in that, as stated in the order disposing of the matter, it was found proven:

"that said Ike Alderete disobeyed the said injunction and final judgment on March 1, 1918, in this, that he sold and kept for sale intoxicating liquors, at the premises of La Union Fraternal, a corporation, in El Paso, El Paso County, Tex., and that he on said date used the stock, means, and assets of said corporation for the purpose of selling and keeping for sale and dispensing intoxicating liquors to the members of said corporation, and further that said Ike Alderete was an officer, to-wit, treasurer of said corporation on said date";

that a punishment of fine and imprisonment was imposed. Holding this procedure proper, the court said:

"The agreed statement of facts sustains the finding. It is obvious that the injunction related to the business or occupation in which the relator and the corporation of which he was an officer was engaged, and that its effect was not to be avoided by removal to another town in the same county any more than transferring its business to another house in the same town would have done so."

The case of Donato v. United States, (C. C. A.) 48 Fed. (2d) 142, 143, was one where appellant had been adjudged guilty of contempt for violating an order of injunction and sought a review thereof. In affirming the order and also holding that in a proceeding for contempt for violating a padlock order in a liquor case under the National Prohibition Act, the defendant was not entitled to trial by jury, the Court of Appeals for the Third Circuit disposed of one of the contentions insisted on for appellant, thus:

"It is urged that, if there was a violation of the law on the appellant's premises, it did not take place in the padlocked portion thereof. The decree was directed against 'the entire barroom in the two-story frame building.' The barroom referred to was after the entry of the decree enlarged by increasing its length about seven feet. After the enlargement, the barroom was called the 'grillroom.'

The prohibition agents purchased liquor and obtained several samples of beer, it is contended, in this enlarged portion of the room. The appellant cannot thus escape the consequences of his conduct by what amounts to a subterfuge."

While not dealing with the particular sort of nuisance here involved, the case of State ex rel. Lyon, Attorney General, 90 S. C. 288, 73 S. E. 179, is pertinent. That was a proceeding by the attorney general against one Brady and one Milton and State Agricultural etc. Society to abate a nuisance of betting at the races conducted at the society's grounds when the proceeding was begun. In response to an order requiring defendants to show cause why they should not be enjoined from maintaining a public betting place alleged in the petition to be a nuisance, the defendants submitted returns averring that none of the acts complained of were then done at the place where it was alleged the nuisance was maintained. Reviewing the sufficiency of these returns, the court used the following language:

"A party to a proceeding to enjoin the maintenance of a public nuisance cannot arrest the proceedings by alleging merely that he no longer maintains the nuisance at the particular place mentioned in the petition. For the court to exercise its discretion to dismiss the proceedings on the ground that there has been a bona fide abatement by the party charged, there must be a satisfactory showing that the abatement is complete. The averments of discontinuance, except that of State Agricultural and Mechanical Society, are therefore insufficient in that they do not show that the acts alleged to constitute a nuisance are no longer done by the parties anywhere within the jurisdiction of the court."

See also Acton v. State, 201 Ind. 686, 171 N. E. 197.

Among the decisions cited for petitioner, appears that of State v. Brush, 318 Ill. 307, 149 N. E. 262. That was not a collateral attack on a judgment imposing a penalty for

contempt of court on account of the alleged violation of an injunction order, but was a review of such judgment sought by error proceedings. There were several other features about the case which appear to distinguish it from the case at bar. The competency of the evidence obtained through search warrants claimed to have been illegal and relied on by the State to show a violation of the injunction was seriously questioned. See United States v. Rosoff, 27 Fed. (2nd) (C. C. A.) 2nd Cir. (719-721), where comment on the case is made. Further, the acts charged as constituting contempt were but two in number and being separated by a lapse of many weeks, disclosed no continuity in the active maintenance of a business such as clearly appears in the case at bar.

Another case upon which reliance is placed by petitioner is that of Watkins v. Wilkerson, 141 Ga. 163, 80 S. E. 718, 719 Ann. Cas. 1915C, 1124, decided in 1913. There a temporary restraining order was brought up for review which, to use the language of the opinion, "was broad enough to enjoin the keeping or maintaining of any buffet, locker club, or any place with or without a name, not only at the place designated in the petition as a 'blind tiger' or liquor nuisance, but, at any other place whatever." The statute on which the proceeding was based, provided in part: "Any place commonly known as a 'blind tiger,' where spirituous, malt, or intoxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such, as now provided by law," etc. The appellate court decided that the order should be modified by striking therefrom so much of it as enjoined defendant "from maintaining a nuisance 'elsewhere' than at the place described in the petition." It was stated in the opinion citing the Iowa cases and the South Carolina case of Lyon v. City Club, supra, that a "general blanket injunction covering the whole State is not warranted." However, Judge Lump-

kin, who concurred in the decision, stated his views in a separate opinion in the course of which he used the following pertinent language:

"I do not think that an injunction can broadly be granted to restrain the conduct of the nuisance 'elsewhere'; that is, anywhere else. Such is not the statute. But I am of the opinion that it can be enjoined from being carried on within the county, and that as my Brethren are requiring the order of the judge of the superior court to be modified because it is too broad, they should not require it to be too narrow.

"If this is not true, then when any citizen or citizens of the county file an equitable petition and enjoin the keeper of a 'blind tiger' from conducting the illegal business which has been declared to be a nuisance, if the injunction applies only at the particular place within the county where the business is being conducted, then all the proprietor has to do is to remove his illegal business into another store, or across the street, or around the corner— anywhere in the county except in the identical place where he was conducting the nuisance—and he will be entirely free from the injunction granted. Such a construction of the act would give it no substantial effect except to require keepers of blind tigers to remove to another place within the county as often as they may be enjoined from conducting the nuisance, though, as will be seen above, we have declared the nuisance to be the illegal sale of liquor within the county. * * * Nor is it any reply to this view to say that a possible nuisance at some future time and at a different place will not be enjoined. It is alleged that this nuisance is now present and active in the county. It is sought to abate it and prevent its continuance. If there is nothing to indicate a probable continuance of illegal sales in the county, there is nothing to enjoin, and the judgment is erroneous. If there is enough to show a probable continuance of the nuisance in the county, then the injunction should be broad enough to stop it. I do not think 'any place' means that the nuisance can only be enjoined so far as it may be conducted at one particular spot in the county. Suppression of a nuisance (which we have declared to arise from the illegal business

itself), rather than exact locality, was uppermost in the minds of the legislature.''

It would seem that the force of the reasoning contained in the excerpt last above given is difficult to avoid. In the case at bar, as previously stated, the defendant was enjoined from ''trafficking'' in, i. e., conducting a continuous business in intoxicating liquor on the premises or elsewhere in the court's district. What the evidence was which led the court to extend the scope of the restraint imposed to include any other place in the district, we have no means of knowing. The relief asked by plaintiff's petition in the injunction suit was exactly that which was given by the court, i. e., a restraining order operative throughout the district. On this collateral attack and with the evidence in the injunction suit absent, we must conclude that there was sufficient proof before the court to justify it in granting the relief prayed. Certainly, subsequent developments in the case would appear to have justified the court in its endeavor to so use its general equitable powers as to prevent a continuing business constituting a nuisance in one place from merely being conducted in a new location.

The preventive purpose of the section of the act under which the injunction was obtained has already been mentioned. The first section of the act itself declares further, that the ''entire act shall be deemed to be an exercise of the police power of the State for the protection of the public health, peace, safety and morals, and all of its provisions shall be liberally construed for the accomplishment of these purposes.'' Many years ago, Mr. Justice Story remarked, 2 Story Eq. §§ 921, 922:

''The jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights and property.

\* \* \* In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information also lies in equity to redress the grievance by way of injunction.''

Commenting on this language, the Supreme Court of the United States, in Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, further said:

''The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy than can be had at law. They can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas, courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community.''

It would seem plain that the sections of the act authorizing the abatement as a nuisance of a place where a continuing traffic in intoxicating liquors is conducted is but the expression of the lawmaking body that the general powers of a court of equity may be invoked to put an end to a nuisance regarded by the legislature as a menace to society. The power of the courts to act in cases of this and kindred sorts with or without statutes undoubtedly exists and has existed for decades. Equity intervenes under such circumstances because preventive relief by injunction is more effective than the slow and inflexible processes of the criminal law after the wrong has been committed, prevention of public injury being better than punishment after the harm is done, even as prevention of private nuisances is to be preferred to damages.

If a continuing nuisance breeding pestilence is carried on in a room on one lot in a city block with the result that

a court of equity enjoins its perpetrator from maintaining it there, shall it be said that the court is without power to fashion its decree so as to prevent a renewal of the nuisance by him in any other spot where its arm may reach? If so, then an addition may be made to the room and the nuisance continued there, or the nuisance may be maintained just across the lot line or—as Judge Lumpkin said —"across the street or around the corner, anywhere in the county except in the identical place where he was conducting the nuisance" and the offending party will nevertheless be free of all restraint at the hands of the court, except through additional suits and injunctions. If so, then though the offending party be the same, the continuing nuisance of the same character, the injury to the public the same as that restrained and prohibited by the court's decree, merely the lot line or the width of the street constitute insuperable barriers to enforcing obedience thereto. The question hardly seems to be one of linear measurement. Such a view would nullify the effective power, always regarded as existing in courts of equity, to fashion the relief granted to meet the requirements of the case, once jurisdiction is acquired and to avoid endless litigation. "It is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction." 7 R. C. L. 1033, § 62.

Our examination of the authorities, some of which have been reviewed above, would lead us to believe that courts of equity are not so helpless in exacting from parties litigant due obedience to their restraining decrees under circumstances such as the record before us presents.

The writ asked for by the petitioner should accordingly be denied.

*Denied.*

KIMBALL, C. J., and BLUME, J., concur.