Thomas W. DIXON and Jessie G. Dixon, Appellants (Interveners below),

v.

Lloyd E. THOMAS and Ralph Thomas, d/b/a Thomas Brothers, Appellees (Defendants below),

First National Bank of Sheridan, a Banking Corporation, Appellee (Plaintiff below).

Lloyd E. THOMAS and Ralph Thomas, d/b/a Thomas Brothers, Appellants (Defendants below),

v.

The FIRST NATIONAL BANK OF SHERI-DAN, a Banking Corporation, Appellee (Plaintiff below),

Thomas W. Dixon and Jessie G. Dixon, (Interveners below).

Nos. 3030, 3031.

Supreme Court of Wyoming.

Jan. 18, 1962.

William J. Kirven, Buffalo, for appellants Thomas W. Dixon and Jessie G. Dixon.

Henry A. Burgess, Sheridan, for appellees and appellants Lloyd E. Thomas and Ralph Thomas.

James A. Zaring, Basin, for appellee First Nat. Bank of Sheridan.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Thomas W. Dixon and his wife sold the Bear Creek Ranch in Big Horn County to Mr. and Mrs. Jack Goggins, including in

the sale 2,400 head of sheep. A chattel mortgage on the sheep for part of the purchase price was given by Goggins and his wife to the Dixons. It was duly filed for record. Subsequently, the interest of the Gogginses was assigned to brothers by the name of Buckley.

The First National Bank of Sheridan loaned money to the Buckley brothers and took a chattel mortgage on cattle, farm machinery and 2,380 sheep. When the Dixons afterwards started to foreclose their mortgage, a settlement was worked out between the Buckleys, the Dixons and the bank under which Dixon and his wife agreed to subordinate their lien to that of the bank. The bank in turn agreed that it would advance not more than $28,011.35 under its mortgage to the Buckleys, and that when certain items of income were received, it would make specified payments to the Dixons totaling $14,000.

Thereafter, one of the Buckley brothers died and the other moved away from the ranch, in consequence of which Dixon and his wife retook possession of the ranch, its equipment and livestock. They then sold the ranch to Thomas Brothers, a partnership. There was included in this sale 1,640 head of sheep and other personal property. The sales agreement contained no general warranty with respect to the personal property, but it did contain the following special provision pertaining to the sheep:

> "The Buyers further acknowledge that they understand that the First National Bank of Sheridan, Wyoming, claims an interest in some of the sheep by virtue of a mortgage executed by a party named Buckley. It is understood and agreed that it is the opinion of the Sellers that this mortgage shall be eventually released by said Bank, but it is agreed that the limit of liability of the Sellers is to replace in kind and number any sheep which might be repossessed by the First National Bank of Sheridan, Wyoming."

The bill of sale contained a typed provision to the effect that title to the sheep was subject to the limitations set forth in the sales agreement, and in addition there was in the printed portion a statement binding the vendors "to warrant and defend the sale of said property, goods and chattels * * * against all persons whomsoever, lawfully claiming or to claim the same."

Several months after the purchase by the Thomases, the bank commenced foreclosure and the sheriff of Big Horn County held a foreclosure sale. At this sale 1,650 sheep were offered and the bank became the purchaser for $20,129.23. That figure represented the amount owing to the bank plus an attorney's fee of $950. The sheriff then issued his certificate of sale to the bank.

Following the foreclosure sale, the bank failed to obtain possession of the sheep it had purchased at such sale, and some time later they were sold by the Thomas Brothers. The bank then sued the Thomases for conversion of the sheep and the Dixons intervened. By the time of the trial, the bank had realized additional funds from a separate Buckley mortgage covering property in California. The surplus of those additional funds had been credited to the Buckley sheep debt, leaving a balance of $2,526.89. Judgment was awarded for that amount to the bank and against the Thomas Brothers. Said Thomas Brothers were in turn given judgment against the Dixons for the same amount.

The Dixons and the Thomases have both appealed. Their appeals are consolidated and this decision covers both. It is the contention of Dixon and his wife that no sheep were repossessed by the First National Bank of Sheridan, and that since their liability was limited to a replacement in kind and number of such as were repossessed, no judgment could be given against them. The Thomas Brothers claim that there was no conversion, and that even if there was a conversion, the bank would be estopped from asserting a claim

because it knew of the sale from Dixons to Thomases and condoned such sale by loaning money to Thomas Brothers. They also argue that Dixons did, in any event, warrant title against the lien of the bank.

A sale of mortgaged property in hostility to the mortgage is a violation of the mortgagee's rights, and upon such sale the mortgagee may maintain an action against the mortgagor for conversion. First Nat. Bank of Newcastle v. Sorenson, 30 Wyo. 136, 217 P. 948, 950. In the case at bar, the Dixons stood in the place of the original mortgagors, and even though they were inferior lien holders the rule with respect to them is still the same. Larkins-Warr Trust v. Ray, 204 Okl. 584, 232 P.2d 156, 158; Worth Finance Co. v. Charlie Hillard Motor Co., Tex.Civ.App., 131 S.W.2d 416, 422.

Although the bank chose to sue the Thomases and not the Dixons, we know of no reason why both could not have been sued. In 14 C.J.S. Chattel Mortgages § 216, p. 823, it is stated that all persons who join with the principal in a conversion are jointly liable with him. The Thomases knew of the prior lien of the bank and they were willing to complete the conversion, apparently on the assumption that Dixons would protect them. There can be no doubt that this action rendered the Thomases liable jointly with the Dixons.

As far as Mr. and Mrs. Dixon are concerned, it matters not whether they did or did not warrant title to Thomas Brothers. In either case they are themselves liable for damages resulting from the conversion. Also, since Dixons made the first sale in hostility to the mortgage, and since they must be presumed in the absence of evidence to the contrary to have received from Thomas Brothers full value for all the sheep, it would be only a matter of common sense and equity that theirs should be the ultimate liability. See Ex parte Moore, 44 Wyo. 92, 8 P.2d 818, 825, to the effect that equity courts may fashion the relief granted to meet requirements of the case; Hinton v. Saul, 37 Wyo. 78, 259 P. 185, 191, to the effect that equity can adapt relief to exigencies; and Wettlin v. Jones, 32 Wyo. 446, 234 P. 515, 517, 236 P. 246, and 236 P. 247, to the effect that no person may take advantage of his own wrong.

The district court then was correct in awarding judgment to the Thomas Brothers, defendants, against Dixon and his wife, interveners, for the amount awarded plaintiff on its suit against the Thomas Brothers.

Dixons complain that the bank failed to remit to them $5,500 of the $14,000 which the bank agreed to pay them under the terms of the subordination agreement. They also say that the bank advanced more than $28,011.35 to the Buckleys, under the chattel mortgage in question. We think they may be correct in these contentions. However, it is apparent that no prejudice resulted to the Dixons in the end.

As a measure of damages for the conversion, the court used only the unpaid balance on the bank's Buckley sheep mortgage, at the time of trial. The $5,500 in question, whether rightly or wrongly, had been credited on this mortgage. If it had not been so credited, the damages would have been that much more. Likewise, if there were excessive advances, they were more than offset by credits from other sources—funds derived from the sale of Buckley property in California.

Actually, the measure of damages applied was to the benefit of the Dixons. If the foreclosure sale had been considered as sufficient to pass title to the bank for 1,650 head of sheep, the court might have considered the value of the sheep as the proper measure of damages. According to the evidence as we understand it, that would have been approximately $32,000. Such a measure of damages would have benefited both the bank and the equity holders in the California property and not the Dixons.

Some claim is made to the effect that Dixons paid $3,115 on a real estate mort-

gage and to the effect that they were entitled to $1,000 for an agister's lien  We do not find sufficient evidence to support either of these claims nor any basis for charging either of the amounts against the bank, and they will not therefore be discussed.  Also, we do not find the evidence pertaining to estoppel on the part of the bank sufficient to compel a different result, and the denial of that defense by the trial judge will not be disturbed

The judgment of the district court was proper and it must be affirmed.

Affirmed.